Ricky F. RINECK, Individually, as surviving husband of Joy E. Rineck, and as guardian for Rachel J. Rineck, a minor, Plaintiff-Respondent-Cross Appellant-Petitioner,

v.

Leonard C. JOHNSON, CRNA, Luther Hospital, St. Paul Fire & Marine Insurance Company, and Wisconsin Patients Compensation Fund, Defendants-Appellants-Cross Respondents,†

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, Defendant.

Supreme Court

*No. 88-1555. Argued March 27, 1990.—Decided June 14, 1990.*

(Also reported in 456 N.W.2d 336.)

†Motion for reconsideration filed.

For the plaintiff-respondent-cross appellant-petitioner there were briefs by *Howard S. Marker,* Minneapolis, Minnesota, and oral argument by *Howard S. Marker.*

For the defendants-appellants-cross respondents there was a brief by *Timothy J. Strattner* and *Schellinger & Doyle, S.C.,* Brookfield and oral argument by *Mr. Strattner.*

WILLIAM A. BABLITCH, J.   Ricky F. Rineck (Rineck) seeks review of a court of appeals' decision, *Rineck v. Johnson,* 150 Wis. 2d 232, 440 N.W.2d 830 (Ct. App. 1989). The issues presented are: (1) whether in a medical malpractice action involving death, the plaintiff's recovery for loss of society and companionship is limited to $50,000 by the general provisions of the wrongful death statute, sec. 895.04(4), Stats; (2) whether a minor child has a separate cause of action for loss of society and companionship when medical malpractice causes the death of one parent and the decedent is survived by his or her spouse; and (3) whether the loss of the decedent's child care services are recoverable by the surviving spouse beyond the child's age of majority.

We conclude that in a medical malpractice action involving death, the $1,000,000 limitation on recovery for total noneconomic damages imposed by the specific statutes applicable to malpractice actions supersedes the $50,000 limitation contained in the wrongful death stat-

utes. We further conclude that a surviving minor child has a cause of action for loss of society and companionship. Finally, we conclude that the surviving spouse may not recover damages for post-majority loss of the decedent's child care services. The decision of the court of appeals is affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

The facts for the purposes of this review are undisputed. Joy Rineck was admitted to the hospital for an emergency cesarean section. During that operation, a nurse anesthetist negligently failed to supply Joy with an adequate supply of oxygen. Consequently, Joy lapsed into a coma and died seven days later. The child who was delivered via the cesarean, Rachel, survived but purportedly is profoundly retarded and has cerebral palsy. The medical experts agree that Rachel's condition will not significantly improve. Unable to care for Rachel in his home by himself while employed full-time, Rineck found it necessary to move Rachel to his parents' home, where she is cared for by her grandmother.

In April, 1986, Rineck filed a Submission in Controversy pursuant to ch. 655, Stats, to pursue medical malpractice claims for damages sustained by himself and Rachel as a result of Joy Rineck's injuries and death, and as a result of Rachel's own injuries. That action was transferred without a hearing to circuit court when the legislature changed the procedure for prosecuting medical malpractice claims later that year. Rineck filed an amended complaint alleging a negligence action on his own behalf and a negligence action on behalf of Rachel for her personal injuries. Rineck claimed, among other things, damages for loss of his wife's society and companionship, for his loss of his wife's help in caring for Rachel, and for Rachel's loss of her mother's society and companionship. By agreement of the parties, claims

relating to Joy's injuries and death, and those relating to Rachel's injuries, were bifurcated and the claims involving Joy were set for trial. The present action does not involve those claims relating to Rachel's injuries.

The defendants filed several pretrial motions: (1) to limit Rineck's claim for loss of his wife's society and companionship to $50,000 pursuant to sec. 895.04(4), Stats; (2) to exclude the claim for Rachel's loss of her mother's society and companionship; and (3) to deny that part of Rineck's claim for the loss of his wife's child care services that relate to the period beyond Rachel's eighteenth birthday.

The trial court denied the motion to impose a $50,000 limit on Rineck's claim for loss of society and companionship. The court held that the general wrongful death limitation under sec. 895.04(4), Stats, was superseded in medical malpractice actions involving death by the specific $1,000,000 limitation contained in sec. 893.55(4)(d), which is referenced by the medical malpractice statutes.

However, the trial court granted the defendants' motion to preclude Rachel's claims for loss of her mother's society and companionship. The trial court took under advisement the motion to exclude any damages for post-majority child care services that her mother would have provided for Rachel.

The jury awarded $408,987 in pecuniary damages, including $30,000 representing the post-majority cost of child care services. The jury also awarded $250,000 for loss of society and companionship. The trial court upheld the award of $250,000 for Rineck's loss of his wife's society and companionship. However, pursuant to its earlier ruling, the trial court determined that the amount representing loss of child care services should be eliminated from the damage award.

The defendants appealed that portion of the trial court's judgment which refused to limit Rineck's loss of society and companionship to $50,000. Rineck cross-appealed from that portion of the trial court's judgment which excluded Rachel's claim for the loss of her mother's society and companionship, and that portion of the decision eliminating the $30,000 jury award for post-majority child care.

The court of appeals reversed the trial court's decision on the noneconomic loss limit and held that the $50,000 limit under the wrongful death statute applied to Rineck's loss of society and companionship claim. However, the court of appeals affirmed the trial court's decision on the remaining two issues raised on the cross-appeal. The court concluded that the wrongful death statutes prohibited a surviving child from maintaining a claim for loss of society and companionship when the surviving spouse asserts such a claim, and that child care costs were limited to the child's minority.

We accepted review on August 15, 1989. The issues presented involve the interpretation of statutes, which are questions of law that we review independently of the lower courts' decisions. *DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985).

We conclude that in a medical malpractice action involving death, the $1,000,000 limitation on recovery for total noneconomic damages under the specific statutes applicable to medical malpractice actions supersedes the $50,000 limit under sec. 895.04(4), Stats. We further conclude that a minor child may maintain an independent cause of action for loss of society and companionship when medical malpractice causes the death of a parent. Finally, we conclude that the surviving

spouse may not recover damages for post-majority loss of child care services.

## I. Noneconomic damages limitations

We turn first to the issue whether the $50,000 wrongful death limitation on damages for loss of society and companionship contained in the general provisions under sec. 895.04(4), Stats, is applicable to an action for medical malpractice involving death under ch. 655. We hold that it is not.

Chapter 655, Stats, enacted by ch. 37, Laws of 1975, established an exclusive procedure for the prosecution of malpractice claims against a health care provider, as defined by sec. 655.001(8). *State ex. rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 499, 261 N.W.2d 434 (1978). Chapter 655 sets tort claims produced by medical malpractice apart from other tort claims, and parties are conclusively presumed to be bound by the provisions of the chapter regardless of injury or death. *See* secs. 655.005, 655.007.

Like the Worker's Compensation Act, ch. 655, Stats., is a legislative response to specific economic and social needs, and it applies to a limited class of persons. Both laws modify general civil law in instances where the statutes speak to a given subject. *Id.; see also Stappas v. Kagen,* 109 Wis. 2d 528, 530, 326 N.W.2d 757 (1982).

Chapter 655, Stats., expressly delineates the damages limitation imposed in medical malpractice actions. Under sec. 655.017, "[t]he amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider . . . is subjected to the limit under s. 893.55(4)." Section 893.55(4)(b) provides:

*The total noneconomic damages recoverable under ch. 655 for bodily injury or death,* including any action or proceeding based on contribution or indemnification, *may not exceed the limit under par. (d)* for each occurrence from all health care providers and all employees of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the patients compensation fund for any action filed on or after June 14, 1986 and before January 1, 1991. (Emphasis added.)

The limitation contained in par. (d) referenced above provides:

The limit on total noneconomic damages for each occurrence under par. (b) shall be $1,000,000 for actions filed on or after June 14, 1986 . . ..

The medical malpractice statutes also identify in sec. 893.55(5), Stats, several types of noneconomic loss recoverable in medical malpractice actions involving injury or death. One component of total noneconomic damages listed is the loss of society and companionship.

The defendants acknowledge that the total amount of noneconomic damages recoverable under the medical malpractice statutes is limited to $1,000,000. However, they argue that the component represented by society and companionship is itself limited to $50,000 by the wrongful death statute, sec. 895.04(4), Stats. We disagree.

Significantly, ch. 655, Stats., does not state that damages recoverable in medical malpractice cases are also subject to the $50,000 limitation under the general wrongful death provisions of sec. 895.04(4). Had the legislature desired to appropriate the more restrictive damage limits of sec. 895.04(4) it would have provided so explicitly as it did in other instances. Chapter 655 incor-

porates by specific reference certain other statutes which the legislature intended to apply in medical malpractice actions. For instance, the comparative fault statute, sec. 895.045, is specifically incorporated into ch. 655 by sec. 893.55(4)(c). Section 655.27(5)(d) provides that no interest may be paid by the fund on the unpaid portion of any claim filed under the paragraph except as provided under secs. 807.01(4), 814.04(4), or 815.05(8). Moreover, prior to the repeal of the panel procedure, the Rules of Civil Procedure were specifically incorporated by sec. 655.17(1). We do not believe that the legislature would have taken pains to specifically refer to particular statutes such as these if it intended to incorporate without mention other miscellaneous general provisions, such as sec. 895.04(4).

It is also significant to note that grafting the general wrongful death damages limitation under sec. 895.04(4), Stats, onto ch. 655 creates an anomaly in the computation of damages where comparative fault is a factor. As the trial court correctly observed, both statutes require a reduction for comparative fault pursuant to sec. 895.045. However, they do so in completely different ways. For example, to calculate the award in a medical malpractice action, the total noneconomic damages are found without regard to the $1,000,000 limit. Where applicable, the comparison found under sec. 895.045 is applied, and then the result, if higher than the limit, is reduced to the limit. *See* sec. 893.55(4)(c). This approach is directly contrary to the current calculation used in the wrongful death statute. *See* sec. 895.04(7). Under sec. 895.04(7), reduction of noneconomic damages to the statutory limit precedes reduction for comparative fault. *See also* D. Saichek, *A Summary of the New Statutes Governing Medical Malpractice,* Wisconsin Bar Bulletin 8, 10 (October 1986).

667

The verdict reduction provisions of the wrongful death and medical malpractice statutes would therefore produce different damage awards even if the damage limits were the same. To illustrate, assume both statutes imposed a $50,000 limit in a case where the jury awards $250,000 for loss of society and companionship and the victim is assessed 20 percent fault. After reduction under the wrongful death statute, that award would be $40,000 ($250,000 first reduced to $50,000 by application of the limit, then reduced by the plaintiff's comparative fault.) However, under the medical malpractice version, the same award nets $50,000 ($250,000 reduced to $200,000 for the plaintiff's comparative fault, then reduced to the lesser of that amount or the limit).

Grafting the wrongful death statute's verdict reduction procedure onto ch. 655, Stats., would also create different substantive rights in cases involving injury and those involving death, contrary to the express legislative intention to treat medical malpractice claims involving "injury or death" in exactly the same manner. *See* secs. 655.005, 655.007. For example, the $1,000,000 limitation on total noneconomic damages would apply if the plaintiff was injured by medical malpractice, but the $50,000 limitation of the wrongful death statute would apply if the injuries resulted in death.

Accordingly, we conclude that the $50,000 limitation under the general wrongful death provisions of sec. 895.04(4), Stats, is inapplicable to this action involving medical malpractice. The trial court correctly determined that the limitation established by sec. 895.04(4) was superseded in medical malpractice actions by virtue of the $1,000,000 limitation in sec. 893.55(4). The decision of the court of appeals is therefore reversed, and the

jury's award for loss of spousal society and companionship is reinstated.

## II.   Rachel's loss of society and companionship

The second issue presented involves whether a minor child has a separate cause of action for loss of society and companionship when medical malpractice causes the death of one parent and the decedent is survived by his or her spouse. As an element of common law, the doctrine permitting recovery for loss of society and companionship was initially created and developed by courts of law. *Shockley v. Prier,* 66 Wis. 2d 394, 401, 225 N.W.2d 495 (1975). Thus, this is an area where either this court or the legislature may act. *Id.*

In *Moran v. Quality Aluminum Casting Co.,* 34 Wis. 2d 542, 150 N.W.2d 137 (1967), we declared for the first time that a woman could maintain an action for the loss of her husband's consortium. We stated at 551–52:

> The genius of the common law is its ability to adapt itself to the changing needs of society. Because the bases on which the old common-law rule which denied to the wife the right of recovery for loss of her husband's consortium rest on historical concepts which long ago disappeared, we deem the rule of *Nickel v. Hardware Mut. Casualty Co.* should be overruled . . ..

In *Shockley,* 66 Wis. 2d at 401, we concluded for the first time that "the law should recognize the right of parents to recover for loss of aid, comfort, society and companionship of a child during minority when such loss is caused by the negligence of another." The *Shockley* decision focused upon the changes in the family relationship which occurred since 1925, when the court found that parents could recover only for the loss of the

669

minor's earning capacity and reasonable medical and nursing expenses during minority. *Id.* at 396–97 (citing *Callies v. Reliance Laundry Co.,* 188 Wis. 376, 380, 206 N.W. 198 (1925)). In rejecting the argument that if such a change is to be made, it should be made by the legislature and not the courts, we reiterated that the common law is a developing body of law and that it is as much the court's responsibility as the legislature's to make changes in the law where the common law rule no longer fits present-day social realities. *Shockley* at 397–99.

In *Theama v. City of Kenosha,* 117 Wis. 2d 508, 527, 344 N.W.2d 513 (1984), we were faced with the reverse situation of that found in *Shockley,* namely whether the minor children of an injured parent could maintain an action for loss of society and companionship. We stated that it was "only logical that the next step in this progression is to protect the child's interest in the parent-child relationship." *Theama,* 117 Wis. 2d at 519. We recognized that the majority of jurisdictions addressing the issue refused to recognize the cause of action. However, we noted an emerging trend towards recognition, and were persuaded by the rationale found in those decisions. *Id.* at 520. Accordingly, we did not await legislative creation of a cause of action, but rather held that a "child may bring a cause of action for the loss of a parent's society and companionship resulting from another's negligence." *Id.* at 527.

The defendants argue that *Theama* is distinguishable on the grounds that the case involved an injury to the parent, rather than death as in the present case. When death results, the defendants insist that the provisions of sec. 895.04(2), Stats., disallow a child an independent cause of action when the deceased parent is survived by his or her spouse. In support of their argument, the defendants cite *Hanson v. Valdivia,* 51 Wis. 2d 466, 475,

187 N.W.2d 151 (1971), where in applying sec. 895.04(2), this court stated:

> [S]urviving children do not have a cause of action for the wrongful death of one of their parents when the decedent is survived by his or her spouse . . .. When there is a surviving spouse the action must be brought by or on behalf of that spouse, and the only special protection afforded the children is that the court may, in its discretion, impose a lien in favor of the children on the amount recovered, not in excess of 50 percent of the recovery.

We disagree that sec. 895.04(2), Stats, prevents recovery in the case presently before us. Rachel's claim originates under ch. 655 rather than the general wrongful death statutes. Chapter 655 controls all claims "for injury or death on account of medical malpractice . . .." Section 655.007. As stated previously, by singling out medical malpractice claims in such a manner, the legislature intended to set medical malpractice cases involving death apart from other death cases to which the general wrongful death statute applies. Therefore, sec. 895.04(2) does not prevent a minor child from maintaining a cause of action for loss of society and companionship when medical malpractice causes the death of a parent.

We thus conclude that the reasons expressed in *Theama* for recognizing a minor child's cause of action for loss of society and companionship in cases involving injury to the parent apply with equal force to cases where medical malpractice causes death. Chapter 655, Stats., recognizes that there is no logical distinction between injury and death claims arising out of medical malpractice. Once medical malpractice produces a loss, a remedy exists regardless whether the consequence is injury or death. We further conclude consistent with *Theama,*

that recovery under this cause of action is limited to the child's minority, since the minor is the one whose relationship is most likely to be severely affected by negligent injury or death to the parent. *Id.* at 527.[1]

Because the trial court precluded Rachel's claim for loss of her mother's society and companionship, and the court of appeals affirmed that determination, the matter is remanded to the trial court for further proceedings on this issue.

### III. Post-majority loss of child care services

The third issue involves whether Rineck is entitled to compensation for the loss of his wife's child care services beyond the child's eighteenth birthday. Rineck argues that Rachel, who has allegedly suffered severe and permanent injuries, will require support and maintenance well beyond her minority. Therefore, Rineck insists that he should be able to recover the value of these services his wife would have provided.

We agree with the court of appeals that the amount the jury awarded Rineck for child care services after Rachel reached age eighteen is not recoverable. We

---

[1]In light of the fact that Rachel's claim for her injuries was bifurcated, and for the aid of the trial courts, we declare for reasons identical to those expressed in *Moran,* 34 Wis. 2d at 558, and *Shockley,* 66 Wis. 2d at 404, that a child's cause of action for loss of society and companionship must be joined with that of the injured parent, if feasible, and the claimant has the burden to establish that it was infeasible for his or her claim to be joined. By so requiring, the possibility of double recovery can be guarded against by the form of special verdict and the accompanying instructions to the jury in cases tried to a jury. *See Moran,* at 558; *see also Huggins by Huggins v. Sea Ins. Co., Ltd.,* 710 F. Supp. 243 (E.D. Wis. 1989).

recently stated in *Marciniak v. Lundborg,* 153 Wis. 2d 59, 71, 450 N.W.2d 243 (1990), that the parental duty of support ordinarily ceases at the age of majority. This rule involves a recognition that parents are obligated by law to provide care only through their child's minority. *See* sec. 49.90(1)(a), Stats. In addition, this rule provides parity with the aforementioned rationale of *Theama,* which limits a child's loss of society and companionship to the period of minority. We recognize that in certain instances this result may seem harsh. However, we consider the decision as to any change in the limitation on recovery for the support of a child to be a public policy matter uniquely within the province of the legislature. *See Steinbarth v. Johannes,* 144 Wis. 2d 159, 164, 423 N.W.2d 540, 541 (1988).

We emphasize, however, as did the court of appeals, that this is an action brought by the surviving spouse for the death of his wife. The claims relating to Rachel's injuries were bifurcated and therefore we are not reviewing damages awarded to Rachel in her own right for injuries she received as a result of the medical malpractice. Accordingly, nothing in this decision precludes Rachel from recovering damages for the special care she may need beyond the age of majority in her own action based on the defendant's negligence.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and remanded to the trial court for further proceedings.