PATIENTS COMPENSATION FUND, Plaintiff-Respondent,†

v.

LUTHERAN HOSPITAL-LACROSSE, INC., Wisconsin Hospital Association Optional Segregated Account, Nancy Bowell, R.N., ABC Insurance Company, Carol Cowell, R.N., American Family Mutual Insurance Company, Darlene Denstad, L.P.N., DEF Insurance Company, Trudy Pierick, R.N., GHI Insurance Company, Sharon Wiebke, R.N. and JKL Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 96–1344. Oral argument May 22, 1997.—Decided December 30, 1997.*

(Also reported in 573 N.W.2d 572.)

†Petition to review granted.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *William A. Kirkpatrick* of *Hale, Skemp, Hanson, Skemp & Sleik* of La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Paul J. Kelly* and *Amy J. Doyle* of *Schellinger & Doyle, S.C.* of Brookfield.

Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. Lutheran Hospital-La Crosse, Inc.; Wisconsin Hospital Association Optional Segregated Account; Nancy Bowell, R.N.; Carol Cowell, R.N.; American Family Mutual Insurance Company; Darlene Denstad, L.P.N.; Trudy Pierck, R.N.; and Sharon Wiebke, R.N. appeal from an order issued by the circuit court declaring subrogation rights in favor of the Patients Compensation Fund.[1] The circuit court

---

[1] The subrogation rights arose subsequent to the settlement of a malpractice action involving the appellants and others.

concluded that Carol Cowell, R.N., the insured under a professional liability rider issued by American Family, had coverage available to the Fund pursuant to ch. 655, STATS. However, we conclude that the subrogation claims of the Fund against Lutheran Hospital and Cowell are limited to a total of $400,000 because: (1) Cowell was an employee of Lutheran Hospital acting within the scope of her employment; (2) Cowell is not a health care provider within the statutory definition of ch. 655; and (3) the Fund is limited by ch. 655 to seeking subrogation from health care providers and their insurers. Therefore, we reverse the order of the circuit court and remand the matter for further proceedings consistent with this opinion.

## BACKGROUND

On September 17, 1991, Zachary Stach had surgery at Lutheran Hospital. Certain medications were prescribed for post-surgery pain. On September 18, 1991, Zachary suffered a cardiopulmonary arrest resulting in severe anoxia and permanent brain damage. As a result of the post-operative care which is alleged to have caused Zachary's cardiopulmonary arrest, Zachary and his parents filed a negligence suit against the operating physician, his clinic, Lutheran Hospital and its insurers.

The parties entered into mediation, and as a result of that mediation, the Fund agreed to pay Zachary up to $10,000,000. The treating physician and his clinic contributed $400,000, the insurer of Lutheran Hospital contributed $200,000, and the remaining $9,400,000 was to be paid by the Fund. The Fund then sued Lutheran Hospital, its insurer, and the nurses involved in the treatment of Zachary, as well as their alleged insurers. The Fund sought subrogation based on the

settlement which had been reached in mediation. One of the employees of Lutheran Hospital who participated in Zachary's care, Carol Cowell, R.N., had $300,000 of professional liability coverage because of a rider on her American Family homeowner's policy. After learning of Cowell's insurance, the Fund sought $200,000 from Lutheran Hospital, in addition to the $200,000 already paid, and the policy limits of $300,000 from nurse Cowell's insurer, American Family. It did not seek subrogation from any of the other nurses who were involved in Zachary's care.[2] At oral argument, the Fund implied that it would not attempt to hold the uninsured nurses liable for any part of the settlement, on a personal basis, but asserted that Cowell was in a different position because she had professional liability insurance.

The Fund moved for declaratory relief pursuant to § 806.04(1), STATS., alleging that a total of $700,000 should be paid to it from Lutheran Hospital and American Family, on behalf of Cowell. Lutheran Hospital's insurer and American Family acknowledge on appeal that a total of $400,000 is owed to the Fund, pursuant to § 655.23(4) and (5), STATS. However, they contest that any payment is due from Cowell or her insurer, individually.

## DISCUSSION

**Standard of Review.**

This case presents questions of statutory interpretation, which we review *de novo*. *Wisconsin Patients*

---

[2] No other nurse except Cowell had professional liability insurance.

*Compensation Fund v. Continental Cas. Co.*, 122 Wis. 2d 144, 150, 361 N.W.2d 666, 669 (1985).

## Chapter 655.

### *1. Background.*

Chapter 655 was created by the Laws of 1975 ch. 37, § 9 to establish an exclusive procedure for the prosecution of medical malpractice claims. It applies both to direct and derivative claims arising out of alleged medical malpractice. *Rineck v. Johnson*, 155 Wis. 2d 659, 665, 456 N.W.2d 336, 339 (1990); § 655.005(1), STATS.;[3] § 655.007, STATS. The statutory scheme was intended to limit the increasing cost of medical malpractice claims, both to those who provide health care and to their employees, in order to reduce the potential of those claims diminishing the availability of health care in Wisconsin. *Wisconsin Patients Compensation Fund v. WHCLIP*, 200 Wis. 2d 599, 607, 547 N.W.2d 578, 580–81 (1996); *see also State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 533–34, 261 N.W.2d 434, 454 (1978) (Abrahamson, J., dissenting). The same legislation also created the Fund. *Id.*

Chapter 655 is similar to the Workers Compensation Act in that it is a legislative response to a perceived societal need, and it is the exclusive remedy for claims against a health care provider or an employee of a health care provider, arising from

---

[3] Section 655.005(1), STATS., states in relevant part:

Any person listed in s. 655.007 having a claim or a derivative claim against a health care provider or an employe of the health care provider, for damages for bodily injury or death due to acts or omissions of the employe of the health care provider acting within the scope of his or her employment and providing health care services, is subject to this chapter.

alleged medical malpractice. *See Rineck*, 155 Wis. 2d at 665, 456 N.W.2d at 339. Because the Fund is an entity created by ch. 655, the nature and the scope of its authority is exclusively statutory. *WHCLIP*, 200 Wis. 2d at 606, 547 N.W.2d at 580. Therefore, the Fund's claims require us to interpret ch. 655, which conferred its authority.

The legislature established the Fund with the intention that it would underwrite medical malpractice liability incurred in excess of certain statutorily established limits for which health care providers were held responsible. Those limits were established by § 655.23(4), STATS., which states in relevant part:

> Health care liability insurance, self-insurance or a cash or surety bond under sub. (3)(d) shall be in amounts of at least . . . $400,000 for each occurrence and $1,000,000 for all occurrences in any one policy year for occurrences on or after July 1, 1988.

In order that the Fund provide only excess coverage, it has been held that the Fund has limited rights of subrogation against health care providers and their insurers. The Fund's subrogation rights are necessary to accomplish the purposes of ch. 655 because they prevent the Fund's assets from being used to pay "an insured's statutorily mandated coverage rather than to pay only that portion of a successful claim exceeding the insured's mandated coverage." *WHCLIP*, 200 Wis. 2d at 613, 547 N.W.2d at 583; §§ 655.27(1) and 655.23(4), STATS. The Fund's subrogation claims against health care providers are derivative of primary medical malpractice claims, and as such, they are controlled by the provisions of ch. 655. *WHCLIP*, 200 Wis. 2d at 620, 547 N.W.2d at 586; § 655.005(1), STATS.

Further, only health care providers are required by ch. 655 to be responsible for certain levels of liability for potential medical malpractice actions, by carrying liability insurance or qualifying as self-insurers. Section 655.23(3)(a), STATS. However, every person who participates in the delivery of health care is not necessarily a health care provider. Health care provider is a term with a defined meaning for purposes of ch. 655. Section 655.001(8), STATS. And finally, as the supreme court held in *WHCLIP*, the Fund's derivative claims arise only when the Fund has paid an obligation ascribed by ch. 655 to a health care provider or to a health care provider's insurer. *WHCLIP*, 200 Wis. 2d at 621, 547 N.W.2d at 586. Therefore, in order to have a claim for subrogation against Cowell, and thereafter, against American Family, the Fund must have paid an obligation allocated to Cowell or to American Family by ch. 655.

### 2. *The Fund's Claims.*

Because the Fund is an entity created by statute, any derivative claim brought by it must arise from the authority granted to it in ch. 655. *WHCLIP*, 200 Wis. 2d at 606, 547 N.W.2d at 580. Therefore, we must examine whether the Fund's claims against Cowell and American Family are made against a health care provider and a health care provider's insurer because it is *only* health care providers and *their* insurers who are potentially liable for ch. 655 subrogation claims by the Fund. This is so because a ch. 655 subrogation claim accrues to the Fund only when it pays an obligation that the statutes mandate that a health care provider, or its insurer, must pay. *Id.* at 621, 547 N.W.2d at 586.

Chapter 655 defines hospitals as health care providers. Sections 655.001(8) and 655.02(1)(h), STATS.

55

However, nurses employed by a hospital to participate in the care of a hospital's patients, with the exception of nurse anesthetists, are not defined as health care providers. Instead, they are treated, generically, as employees, comprising a unit with the health care provider. *See e.g.,* §§ 655.05 and 655.27(5), STATS.; *see also Erickson v. Gundersen,* 183 Wis. 2d 106, 515 N.W.2d 293 (Ct. App. 1994).

Furthermore, nowhere in ch. 655 is there any requirement that employees of health care providers acting within the scope of their employment personally assume any level of liability or maintain insurance. Rather, § 655.23(5), STATS., establishes collective liability limits for health care providers and those closely related to them. It states in relevant part:

> While health care liability insurance, self-insurance or a cash or surety bond under sub. (3)(d) remains in force, the health care provider, the health care provider's estate and those conducting the health care provider's business, including the health care provider's health care liability insurance carrier, are liable for malpractice for no more than the limits expressed in sub. (4) or the maximum liability limit for which the health care provider is insured, whichever is higher, if the health care provider has met the requirements of this chapter.

██ Section 655.23(5), STATS., does not mention employees of health care providers, but instead, refers to "those conducting the health care provider's business." The statute does not define who is included within that group; however, the phrase is modified by the clause "including the health care provider's health care liability insurance carrier." From that modifica-

tion, we conclude that the phrase, "those conducting the health care provider's business" comprises a class of persons broader than, but inclusive of, a health care provider's employees. Section 655.23(5) establishes that those conducting a health care provider's business must be treated as a unit with the health care provider for liability purposes. Therefore, we conclude that Cowell has no exposure to personal liability under ch. 655.

At oral argument the Fund's attorney maintained that it had a right to reach Cowell's insurance, even if it did not have a right to reach Cowell, personally. If that is true, such a right must arise either from ch. 655 or from some benefit Cowell's American Family policy voluntarily conferred on the Fund.[4]

The Fund asserts that *Wisconsin Patients Compensation Fund v. St. Paul Fire and Marine Ins. Co.*, 116 Wis. 2d 537, 342 N.W.2d 693 (1984), provides support for its claim to the policy limits of the American Family policy. We disagree. In *St. Paul,* a physician had malpractice insurance totaling 1.1 million dollars. The Fund demanded that the insurer pay the policy limits before it covered the excess damages and St. Paul objected, claiming only $200,000[5] was owed before the Fund's obligations under ch. 655 com-

---

[4] The Fund argues that if it cannot collect under the American Family policy, Cowell has paid for insurance from which she will receive no benefit. This appears to us an argument that would be better made by Cowell, who paid the premiums. However, she does not do so, but rather, asserts that there are conceivable situations, such as occasions when she provides out-of-state care, where the insurance would be of financial benefit to her.

[5] At the time of the malpractice claim made in *St. Paul,* the statutory minimum for medical malpractice coverage was $200,000. The minimum is now $400,000.

menced. The supreme court agreed with the Fund and held that 1.1 million dollars of malpractice insurance must be exhausted before the Fund had any obligation to provide coverage for the doctor's malpractice. However, it so held because St. Paul provided insurance to a particular type of person: a health care provider. And, it is a health care provider's insurer who comes under the financial responsibility mandate of § 655.23(5), STATS.: "[T]he health care provider's health care liability insurance carrier . . .[is] liable for [$200,000] . . . or the maximum liability limit for which the health care provider is insured, whichever is higher . . . ." *Id.* at 541, 342 N.W.2d at 695.

Although the threshold insurance that a health care provider is required to carry under § 655.23(4) and (5), STATS., has increased to $400,000 since *St. Paul* was decided, the statutes continue to direct that only a health care provider's insurer has exposure to policy limits. There is no provision anywhere in ch. 655 which gives the Fund any right, derivative or primary, against an insurance carrier when its insured is not a health care provider. And, as the supreme court has held, the Fund has only that authority conferred by ch. 655. *WHCLIP*, 200 Wis. 2d at 606, 547 N.W.2d at 580. Therefore, unless American Family voluntarily made its policy limits available to the Fund, the Fund cannot access the $300,000 of professional liability coverage Cowell carried.

In order to make this determination, we examine what American Family contracted to do. The relevant provisions of Cowell's policy states:

PROFESSIONAL LIABILITY COVERAGE

For an additional premium . . . [w]e will pay up to our limit, all sums for which any insured is legally

liable for compensatory damages for an occurrence during the policy period, arising out of:

1.  rendering or failing to render professional services personally administered by the individual insured in the practice of the covered profession . . . .

Because of the language in the policy, Cowell would have had to be "legally liable" for malpractice before the American Family policy would be accessible by the Fund.

In order to determine whether Cowell could be held "legally liable" for medical malpractice, we must return to our examination of ch. 655 because it provides the exclusive criteria for potential liability for claims arising from alleged medical practice in Wisconsin. *Rineck*, 155 Wis. 2d at 665, 456 N.W.2d at 339. Chapter 655 has established that only health care providers can be liable for medical malpractice, and it has defined health care provider in a way which excludes nurses[6] who, while acting within the scope of their employment, assist a hospital in the care of its patients. This analysis leads us to conclude that ch. 655 precludes Cowell from being "legally liable" for malpractice claims governed by the laws of the State of Wisconsin; and therefore, the Fund cannot establish a condition precedent to accessing the American Family policy. Therefore, we are compelled to conclude that neither ch. 655, nor any voluntary act by Cowell or American Family, permits the Fund to claim subrogation beyond the total of $400,000 which the appellants have already agreed to provide.

---

[6] As mentioned above, nurse anesthetists are affected differently by ch 655.

## CONCLUSION

The legislature enacted ch. 655 as the exclusive remedy for medical malpractice actions brought against health care providers and their employees in Wisconsin. The Fund, which was created as a part of this statutory scheme, has no right to a claim of subrogation except those rights arising under ch. 655. Therefore, we conclude that under ch. 655, the Fund's subrogation rights are limited to claims against one who is a health care provider or a health care provider's insurer, as those terms are defined for purposes of ch. 655, after the Fund has become obligated to pay an amount for which another is responsible. Because the classification of those who are obligated to pay under ch. 655 excludes Cowell and American Family, the Fund has no subrogation rights against them under ch. 655. Additionally, the record reflects no voluntary agreement by Cowell or American Family to grant the Fund a right it does not have under the statutes. Therefore, we conclude that the Fund has a claim for subrogation limited to $400,000 against the appellants.

*By the Court.*—Order reversed and cause remanded.