COURT OF APPEALS
DECISION
DATED AND FILED

August 27, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP739**

Cir. Ct. No. **2015CV80**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

DAVID W. PAYNTER AND KATHRYN M. PAYNTER,

PLAINTIFFS-APPELLANTS-PETITIONERS,

V.

PROASSURANCE WISCONSIN INSURANCE COMPANY, JAMES A. HAMP AND AMERICAN PHYSICIANS ASSURANCE CORPORATION,

DEFENDANTS-RESPONDENTS,

CONTINENTAL CASUALTY COMPANY, WISCONSIN INJURED PATIENTS AND FAMILIES COMPENSATION FUND, KEITH A. HENRY AND BLUE CROSS BLUE SHIELD OF MICHIGAN,

DEFENDANTS.

APPEAL from a judgment of the circuit court for Ashland County: ROBERT E. EATON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1     STARK, P.J.   This case is before us for the second time, on remand from the Wisconsin Supreme Court.  The supreme court determined that under Wisconsin's borrowing statute, Wisconsin's statute of limitations applied to and did not bar David and Kathryn Paynter's claim that Dr. James Hamp negligently failed to diagnose David's cancer.  The only remaining issue on appeal is whether an insurance policy that ProAssurance Wisconsin Insurance Company issued to Hamp provides coverage for the Paynters' medical negligence claim.  The circuit court granted ProAssurance summary judgment based on a policy endorsement stating that ProAssurance would not pay damages for "any liability arising from, relating to, or in any way connected with the rendering of or failure to render professional services by [Hamp] … in the State of Michigan and/or outside the State of Wisconsin."  (Formatting altered.)  We conclude the undisputed evidence establishes that Hamp's alleged liability in this case is "connected with" professional services that Hamp performed in Michigan.  We therefore affirm the circuit court's determination that ProAssurance's policy does not provide coverage for the Paynters' medical negligence claim.

## BACKGROUND

¶2     The following facts are undisputed.  David Paynter and his wife, Kathryn, live in Bessemer, Michigan, a city located near the Wisconsin-Michigan border.  In April 2010, David saw Dr. Peter Areson regarding a growth on the upper right side of his neck.  Areson referred David to Hamp, an ear, nose, and throat specialist who practiced in both Ashland, Wisconsin, and Ironwood, Michigan.

¶3     David had an initial consultation at Hamp's Ironwood office on May 13, 2010.  On June 10, 2010, David returned to the Ironwood office for a

second appointment, during which Hamp performed an aspiration of the growth on David's neck.[1] Hamp's notes regarding the June 10 procedure state: "I told [David] this is probably a benign mixed tumor or Warthin's type growth." David similarly testified at his deposition that Hamp told him during the June 10 appointment there was a "98 percent chance" that the growth was not cancerous.

¶4 Hamp's staff subsequently transported the samples taken during the aspiration to Ashland to be analyzed by a pathologist there. Hamp received the pathologist's report on June 14, 2010. He then called the Paynters' home telephone in Michigan from his Ashland office, and during that call he told David that the growth was not cancerous and David did not need any further treatment. However, David ultimately had surgery to remove the growth on June 19, 2014, and was diagnosed with cancer. Shortly thereafter, a comparison of the June 2014 growth samples with the pathology slides from the June 2010 aspiration showed that David's cancer had been present in June 2010.

¶5 In August 2015, the Paynters filed the instant lawsuit against Hamp; his Michigan medical malpractice insurer, American Physicians Assurance Company; and his Wisconsin medical malpractice insurer, ProAssurance.[2] The Paynters' complaint asserted both medical negligence and informed consent claims against Hamp.

---

[1] The term "aspiration" refers to the "[w]ithdrawal of fluid from a cavity by suctioning off with an aspirator" for the purpose of "obtain[ing] specimens." *Aspiration*, TABER'S CYCLOPEDIC MEDICAL DICTIONARY (19th ed. 2001).

[2] The Paynters' complaint also named two other physicians and their respective insurers as defendants. However, their claims against those parties were ultimately dismissed and are not relevant to the issue raised in this appeal.

¶6      ProAssurance moved for summary judgment, arguing its policy did not provide coverage for the Paynters' claims.  ProAssurance relied on a policy endorsement—hereinafter, "the location endorsement"—which stated:

> We will neither defend nor pay **damages** for any liability arising from, relating to, or in any way connected with the rendering of or failure to render **professional services** by [Hamp] at the following location(s):
>
> in the State of Michigan and/or outside the State of Wisconsin.

ProAssurance argued the location endorsement applied to the Paynters' claims because it was "undisputed that the needle biopsy itself was performed in Ironwood, Michigan … and therefore the handling or failure to handle the results flowing from the Michigan procedure can only be reasonably understood to have arisen from rendering or failing to render professional service by Dr. Hamp in Michigan."

¶7      The circuit court initially denied ProAssurance's summary judgment motion.  The court explained:

> Allegedly, Dr. Hamp is negligent in the handling of [the pathology results] either, one, because he never gives the information [to the Paynters] or, two, he gives wrong information.  I think it is impossible to say none of this happened in Wisconsin. …  I think pretty clearly if there was failure to provide information that fell short of the standard of care that failure occurred in Wisconsin, and it wasn't because the biopsy was done in a manner that fell beyond the professional standard.  It is clearly the interpretation and communication of the results.  And none of that happened in Michigan unless you say, well, the treatment only occurs when the patient receives it.  No, I think the treatment is at least equally occurring in Wisconsin when the doctor renders his advice or fails to.

¶8      Based on the circuit court's reasoning, the Paynters subsequently moved for summary judgment on the coverage issue, seeking an order "that

ProAssurance … is obligated to defend and indemnify [Hamp] for the plaintiffs' claims against him." However, following briefing and arguments by the parties, the court denied the Paynters' motion and instead granted summary judgment to ProAssurance on the coverage issue. Contrary to its previous decision, the court concluded ProAssurance's policy did not provide coverage for the Paynters' claims against Hamp because a "professional incident" had occurred in Michigan. The court reasoned that: (1) on the day of the needle aspiration, which took place in Michigan, Hamp gave David a preliminary opinion that the growth was likely benign; and (2) David was in Michigan when he received Hamp's subsequent phone call reporting that the growth was not cancerous, which "confirm[ed]" what Hamp had previously told David on the day of the aspiration.

¶9     The Paynters filed a motion for reconsideration of the circuit court's coverage ruling. Shortly thereafter, however, Hamp moved for summary judgment, arguing that Wisconsin's borrowing statute required the application of Michigan's statute of limitations to the Paynters' claims, and their claims were untimely under the Michigan statute. The court agreed that the Michigan statute of limitations applied and that the Paynters' claims were untimely under that statute. It therefore granted Hamp's summary judgment motion. Based on that ruling, the court entered judgments dismissing the Paynters' claims against both Hamp and ProAssurance. Because it had dismissed the Paynters' claims on other grounds, the court did not address the Paynters' motion for reconsideration of the court's coverage ruling.

¶10     The Paynters then appealed, arguing the circuit court had erred by concluding: (1) that their claims were subject to the Michigan statute of limitations; and (2) that ProAssurance's policy did not provide coverage for their claims. We concluded the Michigan statute of limitations applied to the Paynters'

claims, and the circuit court therefore properly dismissed their claims as untimely. ***Paynter v. ProAssurance Wis. Ins. Co.***, 2018 WI App 27, ¶3, 381 Wis. 2d 239, 911 N.W.2d 374. Given our conclusion in that regard, we declined to address the parties' arguments regarding coverage. ***Id.***, ¶3 n.3.

¶11 The supreme court granted the Paynters' petition for review of our decision and ultimately issued an opinion affirming our decision in part and reversing in part. ***Paynter v. ProAssurance Wis. Ins. Co.***, 2019 WI 65, ¶13, 387 Wis. 2d 278, 929 N.W.2d 113. The court affirmed our ruling that the Michigan statute of limitations applied to the Paynters' informed consent claim, which was therefore untimely. ***Id.***, ¶¶100-03. However, the court concluded the Wisconsin statute of limitations applied to the Paynters' medical negligence claim, and, accordingly, that claim was timely filed. ***Id.***, ¶¶87-88. Because the court concluded Hamp was not entitled to summary judgment on the medical negligence claim, it remanded the matter to this court to address whether ProAssurance's policy provides coverage for that claim. ***Id.***, ¶113.

## DISCUSSION

¶12 We independently review a circuit court's decision on a motion for summary judgment. ***Marnholtz v. Church Mut. Ins. Co.***, 2012 WI App 53, ¶6, 341 Wis. 2d 478, 815 N.W.2d 708. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[3] In this case, the relevant facts are undisputed, and the only disputed issue is whether, given those facts,

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

ProAssurance's policy provides coverage for the Paynters' medical negligence claim. The interpretation of an insurance policy presents a question of law for our independent review.[4] *Marnholtz*, 341 Wis. 2d 478, ¶10.

¶13 Our goal in interpreting an insurance policy is to give effect to the parties' intent. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. In so doing, we construe the policy as it would be understood by a reasonable person in the position of the insured. *Id.* If the policy's language is unambiguous, we simply enforce it as written. *Marnholtz*, 341 Wis. 2d 478, ¶10. However, we construe ambiguous policy language against the insurer and in favor of coverage. *Id.* Policy language is ambiguous if it is reasonably susceptible to more than one interpretation. *Id.*

¶14 As noted above, the location endorsement in ProAssurance's policy states that ProAssurance will not "defend []or pay damages for any liability arising from, relating to, or in any way connected with the rendering of or failure to render professional services[5] by [Hamp] at the following location(s): in the State of Michigan and/or outside the State of Wisconsin." (Formatting altered.) In interpreting this language, the Paynters focus on the words "arising from." Wisconsin courts have previously held that the nearly identical phrase "arising out of" in an insurance policy "is very broad, general, and comprehensive and is

---

[4] The Paynters devote a section of their brief-in-chief to setting forth what they believe are flaws in the circuit court's analysis of the coverage issue. However, because our standard of review is de novo, these alleged errors are of no moment. It is well established that we may "affirm a summary judgment on different grounds than those relied on by the [circuit] court." *International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co.*, 2007 WI App 187, ¶23, 304 Wis. 2d 732, 738 N.W.2d 159.

[5] The policy defines "professional services" as "the provision of medical services, including treatment, making diagnoses and rendering opinions or advice."

ordinarily understood to mean originating from, growing out of, or flowing from." ***Trumpeter Devs., LLC v. Pierce Cty.***, 2004 WI App 107, ¶9, 272 Wis. 2d 829, 681 N.W.2d 269. Thus, when the phase "arising out of" appears in a policy exclusion, "all that is necessary is some causal relationship between the injury and the event not covered." ***Id.***

¶15 In this case, the Paynters' theory of liability is that Hamp was negligent when he erroneously told David during a phone call following the aspiration that the growth on David's neck was not cancerous and that David did not need any further treatment. It is undisputed that Hamp was located in Wisconsin when he made that call. It is also undisputed that, prior to making the call, Hamp had provided professional services to David in Michigan. Specifically, David's initial consultation with Hamp took place at Hamp's Ironwood, Michigan, office, and the subsequent aspiration was also performed at the Ironwood office. The Paynters argue, however, that Hamp's liability did not "arise from" those Michigan services because there is no "causal connection" between those services and Hamp's subsequent negligence. They therefore contend the location endorsement does not preclude coverage for their medical negligence claim.

¶16 The Paynters' interpretation of the location endorsement is fatally flawed because it assumes that the endorsement precludes coverage only for liability "arising from" professional services rendered by Hamp in Michigan and/or outside Wisconsin. In actuality, the endorsement precludes coverage for liability "arising from, relating to, *or in any way connected with*" professional services rendered in Michigan and/or outside Wisconsin. (Emphasis added.) In this case, while we agree that any potential liability on Hamp's part arose from his alleged negligence in communicating the pathology results from the aspiration to David—which occurred while Hamp was in Wisconsin—Hamp's liability is

nonetheless "connected with" professional services that he rendered in Michigan. Again, both David's initial consultation with Hamp regarding the growth on his neck and the subsequent aspiration of that growth occurred at Hamp's Ironwood, Michigan, office. Those services were clearly "connected with" the preparation of the pathology report, the results of which Hamp subsequently incorrectly communicated to David. Each of these events was part of a single course of treatment, and the very purpose of the pathology report was to provide an analysis of the samples taken during the aspiration. On these undisputed facts, the location endorsement unambiguously precludes coverage for the Paynters' medical negligence claim.

¶17 The Paynters disagree and contend that the location endorsement is ambiguous and should therefore be construed against ProAssurance and in favor of coverage. They argue the endorsement is reasonably susceptible to two interpretations—one narrow, and one broad. Under the narrow interpretation, the Paynters argue a reasonable insured could read the endorsement to "preclude coverage only where the professional services were rendered in Michigan and/or outside of Wisconsin." Under the broad interpretation, the Paynters argue the endorsement could be construed to preclude coverage "whenever [Hamp] rendered any professional services in Michigan, even if the negligent professional service[s] causing injury were rendered in Wisconsin."

¶18 We reject the Paynters' ambiguity argument because it again ignores the plain language of the location endorsement, which expressly states that ProAssurance will not cover "any liability … in any way connected with" Hamp's rendering of professional services in Michigan and/or outside Wisconsin. In light of this language, the Paynters' contention that the endorsement could be interpreted to "preclude coverage only where the professional services were

rendered in Michigan and/or outside of Wisconsin" is unreasonable. As the undisputed facts of this case demonstrate, a physician's liability may be "connected with" professional services rendered in another state even when the particular professional services giving rise to a plaintiff's claim occurred in Wisconsin.

¶19    In addition, our interpretation of the location endorsement is not as far-reaching as the Paynters' proffered "broad" interpretation. We do not construe the endorsement to preclude coverage "whenever [Hamp] rendered any professional services in Michigan, even if the negligent professional service[s] causing injury were rendered in Wisconsin." Instead, under our interpretation, coverage is precluded only where Hamp's liability is "in any way connected with" professional services he rendered in Michigan. Thus, under the facts of this case, the endorsement precludes coverage because Hamp's allegedly negligent acts in Wisconsin were "connected with" professional services he rendered in Michigan. Coverage would not be precluded, however, if the Michigan services bore no connection to Hamp's alleged negligence occurring in Wisconsin.

¶20    Because the location endorsement is unambiguous, we may not construe it against ProAssurance. Instead, we must apply the endorsement's language as written. Moreover, because the endorsement is unambiguous, we decline the Paynters' invitation to consider extrinsic evidence regarding what the parties understood the location endorsement to mean at the time Hamp purchased the policy. "When the provisions of the policy itself are not in any way ambiguous, there is no need … to consider extrinsic evidence." *International Chiropractors Ins. Co. v. Gonstead*, 71 Wis. 2d 524, 527, 238 N.W.2d 725 (1976).

10

¶21 The Paynters also argue that the location endorsement does not apply in this case because Hamp's "Wisconsin negligence [in failing to accurately communicate the pathology results] stands alone and is an independent cause of the Paynters' injuries." In support of this argument, they cite *Estate of Jones v. Smith*, 2009 WI App 88, 320 Wis. 2d 470, 768 N.W.2d 245, a case involving the independent concurrent cause rule.

¶22 In *Estate of Jones*, a day care employee picked up a child using the day care's van but then forgot about the child and failed to bring her into the day care center. *Id.*, ¶2. None of the other day care employees inquired about the child's absence, and the child was found dead in the van when her mother arrived to pick her up that afternoon. *Id.* The day care's insurer argued its commercial general liability (CGL) policy did not provide coverage for claims brought by the child's estate based on an exclusion barring coverage for bodily injury "arising out of" the use of an automobile. *Id.*, ¶4. On appeal, we concluded the facts alleged in the estate's complaint triggered coverage under the CGL policy based on the independent concurrent cause rule. *Id.*, ¶16. We explained:

> [T]he crucial question is whether the injuries resulted from negligence, if any, arising out of the use of the auto (the excluded risk) or from the negligence of the staff in failing in its duty to make sure all children expected on any given day are accounted for (the covered risk), or both. If the injuries arise solely from the excluded risk, there is no coverage under the CGL policy. But if the injuries arise from the covered risk, or from both the covered and excluded risk jointly, then coverage is triggered under the CGL policy.

*Id.*, ¶11 (citation omitted).

¶23 The Paynters argue the same analysis is applicable here because their injuries arose from either: (1) a covered risk—i.e., professional services

11

rendered by Hamp in Wisconsin; or (2) both that covered risk and an excluded risk—i.e., professional services rendered by Hamp in Michigan. Once again, however, the Paynters' analysis ignores the fact that the location endorsement excludes coverage not only for liability *arising from* professional services rendered by Hamp in Michigan, but also for liability *in any way connected with* professional services rendered by Hamp in Michigan. The exclusionary language in this case is therefore broader than the exclusion at issue in ***Estate of Jones***. *See id.*, ¶4. As such, our holding in ***Estate of Jones*** that coverage exists when liability arises from both a covered risk and an excluded risk is inapplicable here.

¶24 The Paynters next argue that our interpretation of the location endorsement "omits" the phrase "and/or outside the State of Wisconsin." They contend the presence of that phrase in the endorsement would have led a reasonable insured to conclude that "ProAssurance will provide coverage if there's something that happens in Wisconsin." This interpretation again ignores the fact that the endorsement applies not only to liability "arising from" professional services rendered in Michigan and/or outside Wisconsin, but also to liability "in any way connected with" professional services rendered in Michigan and/or outside Wisconsin. Reading the endorsement in its entirety, a reasonable insured could not conclude that all liability for any acts performed in Wisconsin would be covered if that liability was "connected with" professional services performed in another state.

¶25 Finally, the Paynters argue that if our interpretation of the location endorsement is correct, the endorsement is invalid under Wisconsin law because it violates the spirit or intent of WIS. STAT. ch. 655. Chapter 655 was created in 1975 "to establish an exclusive procedure for the prosecution of medical malpractice claims." ***Patients Comp. Fund v. Lutheran Hosp.-La Crosse, Inc.***,

216 Wis. 2d 49, 53, 573 N.W.2d 572 (Ct. App. 1997), *aff'd*, 223 Wis. 2d 439, 588 N.W.2d 35 (1999). "The statutory scheme was intended to limit the increasing cost of medical malpractice claims, both to those who provide health care and to their employees, in order to reduce the potential of those claims diminishing the availability of health care in Wisconsin." *Id.*

¶26 As the Paynters correctly note, WIS. STAT. § 655.23(3)(a) requires a health care provider to either "insure and keep insured the health care provider's liability by a policy of health care liability insurance issued by an insurer authorized to do business in this state" or to "qualify as a self-insurer."[6] A health care provider—like Hamp—who chooses to comply with this requirement by purchasing liability insurance must obtain a policy with a limit of at least $1 million per claim or occurrence and an aggregate limit of $3 million per year. *See* § 655.23(4)(b)2. Further, § 655.23(3)(b) requires a health care provider's insurer to certify that it has issued a policy providing the required coverage.

¶27 The Paynters argue these requirements would be "thwarted" if we were to interpret the location endorsement "to bar coverage for a Wisconsin practitioner for acts of malpractice occurring in Wisconsin." We are not persuaded that our interpretation of the endorsement thwarts the requirements of WIS. STAT. ch. 655. Under our interpretation, the location endorsement merely excludes coverage for a limited class of claims—those alleging liability "in any

---

[6] The requirements in WIS. STAT. ch. 655 apply to any physician "for whom this state is a principal place of practice and who practices his or her profession in this state more than 240 hours in a fiscal year." WIS. STAT. § 655.002(1)(a). Hamp testified at his deposition that before he retired, the majority of his practice was in Wisconsin and he spent at least 240 hours practicing in Wisconsin in any given year. ProAssurance does not cite any evidence contradicting Hamp's testimony. As such, we agree with the Paynters that Hamp was required to comply with ch. 655.

way connected with" professional services rendered by Hamp in Michigan and/or outside Wisconsin. Other claims arising from negligent acts occurring in Wisconsin remain covered. Under these circumstances, we reject the Paynters' assertion that our interpretation of the location endorsement violates the spirit or intent of ch. 655 and thereby renders the endorsement invalid.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.