PATIENTS COMPENSATION FUND, Plaintiff-Respondent-Petitioner,

v.

LUTHERAN HOSPITAL-LACROSSE, INC., Wisconsin Hospital Association Optional Segregated Account, Nancy Bowell, R.N., ABC Insurance Company, Carol Cowell, R.N., American Family Mutual Insurance Company, Darlene Denstad, L.P.N., DEF Insurance Company, Trudy Pierick, R.N., GHI Insurance Company, Sharon Wiebke, R.N. and JKL Insurance Company, Defendants-Appellants.

Supreme Court

*No. 96–1344. Oral argument November 10, 1998.—Decided January 26, 1999.*

(Also reported in 588 N.W.2d 35.)

For the plaintiff-respondent-petitioner there were briefs by *Paul J. Kelly* and *Schellinger & Doyle, S.C.*, Brookfield and oral argument by *Paul J. Kelly*.

For the defendants-appellants there was a brief by *W.A. Kirkpatrick* and *Hale, Skemp, Hanson, Skemp & Sleik*, LaCrosse and oral argument by *W.A. Kirkpatrick*.

¶ 1. N. PATRICK CROOKS, J. The Wisconsin Patients Compensation Fund (the Fund) appeals a published decision of the court of appeals[1] reversing an order of the La Crosse County Circuit Court. The circuit court, Judge Dennis G. Montabon presiding, held

[1] *Patients Compensation Fund v. Lutheran Hosp.*, 216 Wis. 2d 49, 573 N.W.2d 572 (Ct. App. 1997).

that the Fund could seek contribution for its payment in settlement of a malpractice claim from the professional liability insurer of a registered nurse, as long as it established that the nurse was negligent. The court of appeals reversed, holding that the Fund could not sue the registered nurse because the Fund's subrogation rights are restricted to claims against Wis. Stat. ch. 655[2] "health care providers" and/or their insurers.

¶ 2. The issue presented is whether the Fund has subrogation rights which would allow it to bring a claim for contribution against an allegedly negligent employee of a health care provider and/or the employee's insurer, following the Fund's settlement of a malpractice claim against the health care provider. We conclude that the Fund does not have such subrogation rights which would permit it to pursue a claim for contribution against one whose alleged negligence arose while he or she was conducting a health care provider's business, when that person is not a Wis. Stat. ch. 655 health care provider or a health care provider's insurer.[3] Accordingly, we affirm the decision of the court of appeals.

---

[2] *See* Wis. Stat. ch. 655 (1995–96). Unless otherwise noted, all future references to the Wisconsin Statutes will be to the 1995–96 version.

[3] Each health care provider is required by Wis. Stat. ch. 655 to have a minimum amount of primary insurance coverage. *See* Wis. Stat. § 655.23(4). A health care provider is liable for medical malpractice up to the minimum amount of coverage or the amount for which the provider is actually insured, whichever is greater. § 655.23(5). Consequently, the liability of a health care provider conducting the business of another health care provider, such as a doctor employed by a hospital, would be limited to the amount of his or her own coverage amount plus the coverage amount of the health care provider whose business he

## I.

¶ 3. The facts of this case are not in dispute. The Fund's action for contribution originated as a result of a settlement in a medical malpractice case, *Stach v. Lawnicki*, No. 92-CV–418 (La Crosse County Cir. Ct. filed May 29, 1992). Plaintiff Zachary Stach was admitted to Lutheran Hospital - La Crosse (Lutheran Hospital) for surgical correction of a ureteral stenosis. Clyde C. Lawnicki, M.D., performed the surgery on September 17, 1991. Afterward, Dr. Lawnicki prescribed two medications for Zachary: Belladonna suppositories for bladder spasms and morphine sulphate for pain.

¶ 4. At 6:40 a.m. the next day, Zachary went into cardiopulmonary arrest. Although medical personnel were able to resuscitate Zachary, he suffered considerable neurological damage as a consequence of the cardiopulmonary arrest.

¶ 5. In May 1992, Zachary and his parents, James and Angel Stach, filed their complaint in the *Stach* medical malpractice action. The Staches named Dr. Lawnicki, Lutheran Hospital, Gundersen Clinic, Ltd. (Dr. Lawnicki's employer), Wisconsin Hospital Association Optional Segregated Account (Lutheran Hospital's insurer, hereinafter "WHA"), and the Patients Compensation Fund as defendants in the suit.

¶ 6. The Staches alleged that Zachary's cardiopulmonary arrest was caused by an excessive amount of morphine within his system. According to the Staches, this morphine surplus resulted from the combination of the morphine sulfate and Belladonna suppositories, which also contained morphine. The

or she is conducting. *See, e.g., Erickson v. Gundersen*, 183 Wis. 2d 106, 113 & n.2, 515 N.W.2d 293 (Ct. App. 1994).

445

Staches asserted that Dr. Lawnicki negligently prescribed the medications and that Lutheran Hospital's pharmacy and the nurses who administered the medications negligently failed to notice the error in regard to the prescribed medications. The Staches further alleged that Lutheran Hospital's nurses failed to assess properly Zachary's condition.

¶ 7. The parties in *Stach* entered into mediation. On February 8, 1994, the Fund agreed to pay $10 million in settlement of the case. Lutheran Hospital contributed $200,000 of its $400,000 liability insurance policy limits toward the settlement.[4]

¶ 8. The Fund filed the present action on January 26, 1995, seeking contribution for the settlement in *Stach* from Lutheran Hospital, WHA, the nurses at Lutheran Hospital that treated Zachary, and the nurses' insurers. The Fund sought $200,000 from Lutheran Hospital, representing the remaining portion of the hospital's liability insurance policy limits of $400,000. In addition, the Fund claimed that it was entitled to recover up to the limits of the nurses' professional liability insurance policies.

---

[4] Under the settlement agreement, $6,267,000 of the $10,000,000 was to be placed in a trust fund for Zachary's future medical expenses. Upon Zachary's death, the balance of the trust fund, if any, is to revert to the Fund. The defendants in this case argue that the Fund's contribution claim is not ripe for review. The defendants reason that because the rate of return on the trust, Zachary's life span, and Zachary's future medical expenses are all unknown, the Fund may receive much of its $10 million settlement payment back upon Zachary's death and may therefore not be entitled to contribution. The Fund countered by arguing that it had already paid the $10 million settlement. As the court of appeals did not address the issue of ripeness and it does not in any way affect our decision, we do not address the issue any further.

¶ 9. Carol Cowell, R.N. (Nurse Cowell) was the only nurse named as a defendant who had professional liability coverage. Nurse Cowell's professional liability insurance was contained in a rider to her American Family Mutual Insurance Company (American Family) homeowner's insurance policy.[5] The Fund asserted that it was entitled to contribution from Nurse Cowell of $300,000, the limit of her professional liability coverage.

¶ 10. The Fund moved for a declaratory judgment pursuant to Wis. Stat. § 806.04(1). The Fund asked the court to declare that Lutheran Hospital and Nurse Cowell had $500,000 of liability insurance available to satisfy its contribution claim. The Fund arrived at the amount of $500,000 by adding $200,000 (Lutheran Hospital's $400,000 insurance policy limits less the $200,000 the hospital voluntarily paid in the settlement) to $300,000 (the limits of Nurse Cowell's professional liability insurance policy).[6]

¶ 11. In an order issued February 28, 1996, the circuit court ruled that Lutheran Hospital was liable

---

[5] The rider to Nurse Cowell's American Family homeowner's policy states in relevant part:

> Personal Liability is extended to provide Professional Liability Coverage. We will pay up to our limit, all sums for which any insured is legally liable for compensatory damages for an occurrence during the policy period, arising out of:

> 1. rendering or failing to render professional services personally administered by the individual insured in the practice of the covered profession,. . . .

Kelly Aff., Exh. F, p. 2 (emphasis in original omitted).

[6] The Fund did not pursue its claims against the other nurses named in the original complaint in this action. We assume that the reason is that none of the other nurses possessed professional liability insurance.

447

for the additional $200,000, which Lutheran Hospital apparently conceded. As to Nurse Cowell, however, the court stated, "Nurse Cowell's American Family liability policy is not subject to the Fund's contribution claim." Memorandum Decision and Order, Feb. 28, 1996 at 9. The court reasoned that the issue of Nurse Cowell's negligence was not ripe for judicial determination because the case had been settled in the mediation stage. Finding that the Fund was bound by Wis. Stat. ch. 655 and that Nurse Cowell was not a ch. 655 "health care provider," the court ruled that Nurse Cowell was covered under her employer's liability insurance policy pursuant to Wis. Stat. § 655.005(2).

¶ 12. The Fund filed a motion with the circuit court, asking for reconsideration of the portion of the February 28, 1996, order which involved Nurse Cowell's insurance policy. The Fund contended that the only reason it had filed the motion for a declaratory judgment was to obtain a determination of the amount of insurance available to satisfy its contribution claim. According to the Fund, it had not intended to request a determination of the amount of insurance coverage actually owed by the defendants.

¶ 13. The circuit court responded by issuing a new order on April 29, 1996. In its new order, the court replaced its previous order as to Nurse Cowell with the statement, "Nurse Cowell's American Family liability policy is subject to the Fund's contribution claim, if it is demonstrated in this action that Nurse Cowell was negligent." Order, Apr. 29, 1996 at 2. In the order, the court stated that it had intended to rule this way "based upon the previous submissions of the parties." Order, Apr. 29, 1996 at 2.

¶ 14. The court of appeals granted the defendants leave to appeal and reversed the circuit court's

April 29, 1996, order. The court of appeals began by holding that any authority of the Fund to sue must arise from Wis. Stat. ch. 655. *Patients Compensation Fund v. Lutheran Hosp.*, 216 Wis. 2d 49, 54–55, 573 N.W.2d 572 (Ct. App. 1997). The court held that since Nurse Cowell was not a "health care provider" as defined by ch. 655, ch. 655 precluded the Fund from suing Nurse Cowell or her insurer. *Id.* at 57–59. Instead, the court ruled that the Fund's subrogation claims against Lutheran Hospital and Nurse Cowell are limited by ch. 655 to a total amount of $400,000. *Id.* at 51, 58–59. The court concluded that "the Fund's subrogation rights are limited to claims against one who is a health care provider or a health care provider's insurer, as those terms are defined for purposes of ch. 655, after the Fund has become obligated to pay an amount for which another is responsible." *Id.* at 60.

## II.

¶ 15. This court granted the Fund's petition to review the court of appeals' decision, and we now affirm the court of appeals. We begin by examining the nature of the Fund's claim. The Fund seeks a determination from this court that it may pursue a claim for contribution against Nurse Cowell and/or her insurer following the Fund's payment in settlement of a case in which the plaintiffs alleged that Nurse Cowell and her employer, Lutheran Hospital, were negligent. As we shall explain, the Fund's ability to pursue its contribution claim depends upon whether the Fund possesses subrogation rights in this scenario.

¶ 16. A contribution claim lies when joint tortfeasors, due to their concurring negligence, share a common liability to a third party, but one of the tortfeasors has shouldered more than his or her fair

share of the common burden. *See General Accident Ins. Co. v. Schoendorf & Sorgi*, 202 Wis. 2d 98, 103, 549 N.W.2d 429 (1996). The joint tortfeasor who has borne a disproportionate amount of the common liability may then bring an action for contribution against the other joint tortfeasors to force them to contribute their fair shares of the loss. *See id.*; *see also Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 196, 299 N.W.2d 234, 242 (1980).

¶ 17. The Fund's contribution action stems from the *Stach* malpractice action. The injured third parties in the present situation are the Staches. The Staches' injuries allegedly resulted from the negligence of several joint tortfeasors, including Dr. Lawnicki, Lutheran Hospital, and Nurse Cowell. The Fund's role here is not that of a joint tortfeasor, since there have been no allegations of negligence on the Fund's part. Rather, the Fund was joined in the *Stach* case as the insurer of excess liability for some of the alleged joint tortfeasors. *See* Wis. Stat. § 655.27(1). In this action for contribution, the Fund essentially alleges that it paid more than its fair share of the *Stach* settlement on behalf of the tortfeasors whom it insures because Nurse Cowell, who was also one of the joint tortfeasors, did not pay her proportionate share of the settlement.

¶ 18. Because the Fund is not itself an alleged joint tortfeasor, the Fund may not bring its contribution claim unless it is subrogated to the rights of one of the alleged joint tortfeasors whom it insures. Subrogation rights arise by operation of law "when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *Wisconsin Patients Compensation Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d

599, 620, 547 N.W.2d 578 (1996) (quoting *American Ins. Co. v. Milwaukee*, 51 Wis. 2d 346, 351, 187 N.W.2d 142 (1971)) [hereinafter, "*WHCLIP*"]. *See also D'Angelo v. Cornell Paperboard Prods. Co.*, 19 Wis. 2d 390, 399–400, 120 N.W.2d 70 (1963); Arnold P. Anderson, *Wisconsin Insurance Law* §§ 12.1, 12.2, at 12–5, 12–9, 12–13 (4th ed. 1998). A party who is subrogated to a second party's rights against a third party "steps into the shoes" of the second party and may bring all claims which the second party could have brought against the third party. Arnold P. Anderson, *Wisconsin Insurance Law* § 12.3, at 12–18 (4th ed. 1998).

¶ 19. The issue in this case, then, is whether the Fund has subrogation rights which would allow it to "step into the shoes" of the alleged joint tortfeasors whom it insures. Only if such subrogation rights exist may the Fund bring its contribution action against Nurse Cowell and/or her insurance company.

### III.

¶ 20. We now turn to the question at the heart of this appeal: whether the Fund has subrogation rights which would allow it to commence an action for contribution against an allegedly negligent employee of a health care provider and/or the employee's insurer, following the Fund's settlement of a malpractice claim against the health care provider. We conclude that the Fund does not have subrogation rights which would permit it to pursue a claim for contribution against one whose alleged negligence arose while he or she was conducting a health care provider's business, when that person is not a Wis. Stat. ch. 655 health care provider or a health care provider's insurer.

451

## A.

¶ 21. Chapter 655 was enacted by the legislature during the perceived medical malpractice crisis of the 1970s. *See WHCLIP*, 200 Wis. 2d at 607. Chapter 655 created the Fund to curb the rising costs of health care by financing part of the liability incurred by health care providers as a result of medical malpractice claims. *See id.*

¶ 22. Under the statutory scheme, health care providers must maintain a particular amount of liability insurance to protect themselves from medical malpractice claims.[7] Wis. Stat. § 655.23(3)(a), (4). In 1991, when the injury in this case occurred, the required amount of coverage was $400,000 per occurrence and $1,000,000 for all occurrences in a policy year. *See* Wis. Stat. § 655.23(4).[8]

¶ 23. In addition to maintaining the mandatory amount of primary insurance coverage, health care providers must pay yearly assessments to the Fund. Wis. Stat. § 655.27(3). In return, the Fund essentially serves as an excess liability insurance carrier for health care providers. When a malpractice claim against a health care provider succeeds, the Fund pays

---

[7] Health care providers can meet this requirement either by buying health care liability insurance, self-insuring, or furnishing a cash or surety bond. *See* Wis. Stat. § 655.23(3)(d), (4).

[8] Wis. Stat. § 655.23(4) provides that the health care provider's coverage "shall be in amounts of at least. . .$400,000 for each occurrence and $1,000,000 for all occurrences in any one policy year for occurrences on or after July 1, 1988." We note that the language of the 1995–96 version of § 655.23(4) is identical to the language of the 1991–92 version.

the part of the claim which is in excess of either the amount of primary insurance coverage required by the statute or the amount of primary insurance coverage actually carried by the health care provider, whichever is greater. Wis. Stat. § 655.27(1); *see also WHCLIP*, 200 Wis. 2d at 607.

¶ 24. The Fund argues that the court of appeals erred when it held that the Fund's ability to sue in the present context is controlled by Wis. Stat. ch. 655. The Fund contends that ch. 655 addresses only patients' claims against health care providers, not the Fund's claims for contribution. In addition, the Fund argues that since it is endowed with the power of a common law trustee, it has the power under the common law of trusts to bring suit to protect its assets. *See* Wis. Stat. § 655.27(6); *WHCLIP*, 200 Wis. 2d at 615.

¶ 25. We disagree with the Fund's position. First, this court has already decided that Wis. Stat. ch. 655 governs contribution actions brought by the Fund. *See Wisconsin Patients Compensation Fund v. Continental Cas. Co.*, 122 Wis. 2d 144, 156, 361 N.W.2d 666 (1985). Although the Fund urges us to revisit *Continental Casualty* because it was based on an earlier version of ch. 655, we find that its reasoning remains helpful in interpreting the newer version of the chapter.[9]

---

[9] The court in *Wisconsin Patients Compensation Fund v. Continental Cas. Co.*, 122 Wis. 2d 144, 146 n.2, 361 N.W.2d 666 (1985), construed the language of the 1981–82 version of Wis. Stat. ch. 655. Nevertheless, the Fund's argument in that case that its contribution claim was not governed by ch. 655 was almost identical to its argument in this one. *See Continental*, 122 Wis. 2d at 153. The Fund contended in *Continental* that ch. 655 did not control its contribution claim because the Fund is not a "patient," "patient's representative," or "health care provider." *See id.* We rejected this argument in *Continental* as

¶ 26. Second, we indicated in *WHCLIP* that we must look to Wis. Stat. ch. 655 in order to determine whether the Fund has the authority to bring a suit. *See WHCLIP*, 200 Wis. 2d at 606. We stated that the Fund, as an agency created by the legislature,

> has those powers which are, by necessity, to be implied from the four corners of the statute under which it operates. . . .The power to sue may be implied when the power is necessary to carry out an express power or to perform an express duty, or [when] the action arises out of the performance of statutory powers or obligations. . . .

*Id.* at 611–12 (internal quotations omitted). Consequently, we agree with the court of appeals that the question of whether the Fund has subrogation rights which allow it to bring a contribution claim against a non-health care provider whose liability arose while conducting a health care provider's business is governed by ch. 655.

### B.

¶ 27. Since the Fund was created by Wis. Stat. ch. 655, we must interpret ch. 655 in order to determine the Fund's authority to bring a claim. *See WHCLIP*, 200 Wis. 2d at 606. Statutory interpretation is a question of law which this court reviews *de novo*. *Hartman v. Winnebago County*, 216 Wis. 2d 418, 430, 574 N.W.2d 222 (1998); *WHCLIP*, 200 Wis. 2d at 606. In our review, we benefit from the analyses of the circuit

---

contrary to the underlying purpose of ch. 655 and we reject it in this case as well. *See id.* at 156.

court and court of appeals. *Hartman*, 216 Wis. 2d at 430; *WHCLIP*, 200 Wis. 2d at 606.

¶ 28. At the outset, we note that Nurse Cowell is not a Wis. Stat. ch. 655 "health care provider." A "health care provider" is defined in ch. 655 as "a person to whom this chapter applies under s. 655.002(1) or a person who elects to be subject to this chapter under s. 655.002(2)." Wis. Stat. § 655.001(8). Under § 655.002(1) and (2), however, the only individuals to whom ch. 655 applies or who may elect to be subject to the chapter are "physicians" and "nurse anesthetists." *See* Wis. Stat. § 655.002(1)(a)–(c), (2). Therefore, there is no question, and the parties do not dispute, that a registered nurse such as Nurse Cowell does not qualify as a ch. 655 "health care provider."

¶ 29. Lutheran Hospital, on the other hand, is a Wis. Stat. ch. 655 "health care provider." *See* Wis. Stat. § 655.002(1)(h). For this reason, respondents acknowledge that $400,000 of the respondents' insurance is available to the Fund pursuant to Wis. Stat. § 655.23(4) and (5).

¶ 30. Respondents argue, however, that neither Nurse Cowell nor her individual professional liability insurer, American Family, is responsible for any portion of the $400,000. They reason that because Nurse Cowell is not herself a Wis. Stat. ch. 655 health care provider and because her alleged negligence arose within the scope of her employment for a ch. 655 health care provider, ch. 655 limits Nurse Cowell's malpractice liability to the $400,000 amount covered by Lutheran Hospital's primary liability insurance policy. For the following reasons, we agree.

¶ 31. Our principal goal in statutory interpretation is to determine and give effect to the intent of the

legislature. *Clark v. American Family Mut. Ins. Co.*, 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998); *Hartman*, 216 Wis. 2d at 430–31; *State v. Corey J.G.*, 215 Wis. 2d 394, 411, 572 N.W.2d 845 (1998). As a threshold question, we must decide whether or not the language of the statute is ambiguous. *Corey J.G.*, 215 Wis. 2d at 411. As this court stated in *Corey J.G.*:

> Statutory language is ambiguous if reasonable minds could differ as to its meaning. . . .If the plain language of the statute is ambiguous, we must look beyond the statute's language and examine the scope, history, context, subject matter, and object of the statute to discern legislative intent. . . .We will resolve any statutory ambiguity to advance the legislature's purpose in enacting the statute.

*Corey J.G.*, 215 Wis. 2d at 411–12 (internal quotations and citations omitted).

¶ 32. Chapter 655 does not expressly state whether the Fund has subrogation rights to bring an action for contribution against one conducting a health care provider's business who does not independently qualify as a health care provider, or his or her insurer. Because reasonable persons could differ as to the meaning and interrelationship of the various provisions in ch. 655 as they apply to the question before us, ch. 655 is ambiguous in regard to this issue. Consequently, we must "examine the scope, history, context, subject matter, and object" of ch. 655. *Id.*

¶ 33. As we explained in *WHCLIP*, Wis. Stat. ch. 655 and the Fund were designed by the legislature to help limit "the increasing cost and possible decreasing availability of health care in Wisconsin." *WHCLIP*, 200

Wis. 2d at 607. We conclude that one of the ways in which ch. 655 accomplishes this objective is by including any malpractice liability on the part of a non-health care provider conducting the business of a health care provider within the insurance limit of the health care provider.[10] In this way, each person conducting the health care provider's business is not required to go out and buy his or her own malpractice insurance. A holding that the liability of those conducting a health care provider's business is not covered under the health care provider's primary insurance cap would encourage each of those persons to protect himself or herself by obtaining his or her own professional liability insurance coverage. This scenario would likely increase the cost of health care and decrease its availability, as those who could not afford to purchase insurance to protect themselves might choose to exit the health care field or to charge more for the services provided. Such a result would be contrary to the underlying purpose of ch. 655.

¶ 34. Several provisions of Wis. Stat. ch. 655 lend support to our conclusion that the legislature intended to include the malpractice liability of those conducting a health care provider's business with the limit which applies to the malpractice liability of the health care provider. Wisconsin Stat. § 655.23(5) is perhaps the

---

[10] During oral argument, the Fund indicated its agreement with this statement of the legislature's intent. Specifically, the attorney for the Fund made the following comment:

> [Y]ou can garner. . .from the statute itself that there was an intent for the hospital and those carrying on its business to be subject to one limit, in terms of the x-ray techs, the laboratory, the pharmacists [and so on], so that these people would not have to go out, or the hospital have to go out, and buy insurance, which, in the middle seventies, was apparently difficult to obtain in what was perceived as the malpractice crisis.

provision which most obviously supports our holding. Section 655.23(5) provides:

> While health care liability insurance, self-insurance or a cash or surety bond. . .remains in force, the health care provider, the health care provider's estate, *and those conducting the health care provider's business*, including the health care provider's health care liability insurance carrier, *are liable for malpractice for no more than the limits expressed in sub. (4) or the maximum liability limit for which the health care provider is insured*, whichever is higher, if the health care provider has met the requirements of this chapter.

(Emphasis added.) Under this subsection, the liability of those conducting the health care provider's business may be restricted to the limits set forth in Wis. Stat. § 655.23(4), which, when read together with the other subsections of § 655.23, clearly apply only to health care providers.[11] Alternatively, liability for those conducting the health care provider's business is limited by this subsection to "the maximum liability limit for which the *health care provider* is insured." Wis. Stat. § 655.23(5) (emphasis added). Notably, nowhere does the subsection even mention the amount for which the one conducting the health care provider's business is insured, let alone include it in calculating the liability cap.

¶ 35. Other provisions also support the conclusion that the liability of those conducting a health care provider's business is included within the limit of the health care provider. Wisconsin Stat. § 655.005(2) pro-

---

[11] *See, e.g.,* Wis. Stat. § 655.23(3)(a) (requiring that "every health care provider. . .shall insure. . .by a policy of health care liability insurance. . .or shall qualify as a self-insurer.")

vides, in relevant part, that "[t]he *[F]und shall provide coverage*, under s. 655.27, *for claims against the health care provider or the employe of the health care provider* due to the acts or omissions of the employe acting within the scope of his or her employment and providing health care services. . . ." (Emphasis added.) Similarly, Wis. Stat. § 655.27(1) states:

> There is created [the Fund] for the purpose of paying that portion of a medical malpractice claim which is in excess of the limits expressed in s. 655.23(4) or the maximum liability limit for which the health care provider is insured, whichever limit is greater. . . .*The [F]und shall provide occurrence coverage for claims* against health care providers that have complied with this chapter, and *against employes of those health care providers.* . . .

(Emphasis added.) Finally, Wis. Stat. § 655.27(5)(d) provides:

> A person who has recovered a final judgment or a settlement approved by the board of governors [of the Fund] *against a health care provider, or an employe of a health care provider, that has coverage under the [F]und* may file a claim with the board of governors to recover that portion of such judgment or settlement which is in excess of the limits in s. 655.23(4) or the maximum liability limit for which the health care provider is insured, whichever limit is greater. . . .

(Emphasis added.)

¶ 36. These three provisions seem to demonstrate the legislature's intention that the Fund cover claims which exceed the health care provider's Wis. Stat. ch. 655 liability limit, whether those claims are against the health care provider or one of its employ-

ees. None of the three provisions suggest that the assets or insurance of the employee of the health care provider are relevant in determining the limit on the employee's liability or the amount of excess coverage which the Fund must provide. Indeed, all three provisions address claims against the employee without even referring to the employee's personal assets. Wisconsin Stat. § 655.27(5)(d) goes so far as to allow a person with a malpractice judgment or settlement to file a claim against the Fund without looking to the employee's assets or liability insurance. We conclude that all three provisions evince the legislature's intent that the Fund cover the employee's liability to the extent that it exceeds the limits of the health care provider's primary insurance policy.

¶ 37. Based on our analysis of the legislative intent underlying Wis. Stat. ch. 655, we hold that any liability of a non-health care provider which arises while he or she is conducting a health care provider's business, together with the liability of the health care provider itself, is limited to the amount of primary coverage mandated by Wis. Stat. § 655.23(4) or the amount of coverage actually carried by the health care provider, whichever is greater. *See* § 655.23(5). Since the Fund is required by Wis. Stat. § 655.27(1) to pay any amounts in excess of this limit, the Fund does not have subrogation rights to bring an action for contribution against one conducting a health care provider's business who does not independently qualify as a health care provider, or his or her insurer.

¶ 38. The Fund argues that under this court's decision in *WHCLIP*, it has an implied power under Wis. Stat. ch. 655 to sue the insurer of any responsible party that refuses to contribute to a malpractice settle-

ment. *WHCLIP*, however, involved a situation distinct from the situation presented by this case.

¶ 39. In *WHCLIP*, the primary insurer of a Wis. Stat. ch. 655 health care provider refused to pay part of the settlement in a malpractice claim against the health care provider. *WHCLIP*, 200 Wis. 2d at 605, 608. This court held that the Fund, in its capacity as the health care provider's excess liability insurer, was subrogated to the rights of its insured to sue the primary liability insurer for the amount of the policy limits. *Id.* at 604, 618. We reasoned that if the Fund did not have the authority to sue the primary insurer, the Fund would be forced to pay the statutorily mandated insurance limit of the primary insurer as well as the excess liability amount. *Id.* at 613. Since such a payment by the Fund would contravene the express language of Wis. Stat. § 655.27(1), we concluded that there was "no reasonable doubt" that the legislature intended that the Fund be able to sue the primary insurance carrier for the statutorily mandated coverage amount. *Id.* at 612.

¶ 40. Unlike *WHCLIP*, this case does not involve a claim that the Fund is subrogated to the rights of its insured to sue the insured's primary liability insurer. In contrast, this case involves the Fund's claim that it is subrogated to the rights of its insured to seek contribution from another potential tortfeasor who is not a Wis. Stat. ch. 655 health care provider.[12] The payment by the Fund of Nurse Cowell's alleged fair share of the settlement amount does not contravene any provision of ch. 655. Rather, as we have already pointed out, Nurse Cowell's alleged liability is covered under

---

[12] In *WHCLIP*, this court specifically declined to address the Fund's ability to bring a claim for contribution under the facts of that case. *See WHCLIP*, 200 Wis. 2d at 619 n.16.

Lutheran Hospital's liability insurance, and the Fund is required by ch. 655 to pay the rest. Therefore, not only is there "reasonable doubt" as to whether the legislature intended the Fund to have the subrogation rights it asserts in this case, but the purpose underlying ch. 655 and ch. 655 itself strongly suggest that the legislature did not intend the Fund to have such rights.

¶ 41. The Fund also argues that this court's ruling in *Wisconsin Patients Compensation Fund v. St. Paul Fire & Marine Ins. Co.*, 116 Wis. 2d 537, 342 N.W.2d 693 (1984), requires that we allow the Fund to bring its contribution claim. In *St. Paul*, we held that the $1.1 million total limit of a physician's insurance policies must be exhausted before the Fund's liability began under Wis. Stat. ch. 655. *St. Paul*, 116 Wis. 2d at 538. We reasoned that we should not relieve the physician's insurers of their contractual burdens when neither the language nor the purpose of ch. 655 would support our doing so. *See id.* at 548.

¶ 42. Although the Fund urges us to apply the *St. Paul* rationale in this case and to require American Family to pay the $300,000 limit on Nurse Cowell's insurance policy, we decline to do so. There is a fundamental difference between the *St. Paul* case and this one: in *St. Paul*, we were dealing with the insurer of a Wis. Stat. ch. 655 health care provider, and in this case, we are not. Since the Fund does not have subrogation rights which would allow it to reach the assets of one conducting a health care provider's business who is not himself or herself a health care provider, the Fund cannot reach the insurer of such a person.

## C.

¶ 43. Applying our conclusion to the facts of this case, we hold that Nurse Cowell, as an employee of Lutheran Hospital, was one conducting the hospital's business at the time of her alleged negligence in the *Stach* case. As we have already established that Nurse Cowell is not a Wis. Stat. ch. 655 health care provider, her liability is restricted to the amount of Lutheran Hospital's limit and is covered by Lutheran Hospital's primary insurance coverage. Lutheran Hospital possesses $400,000 of coverage, which is the minimum amount of coverage required by Wis. Stat. § 655.23(4). Therefore, the defendants have $400,000 in total coverage which is subject to the Fund's contribution claim.[13] The Fund may not bring a contribution claim against Nurse Cowell or American Family for her $300,000 policy, since Nurse Cowell is not herself a health care provider.

## D.

¶ 44. Finally, we note that the parties in this case agree that the decision of the court of appeals should be modified to the extent that it limits the Fund's subrogation rights to suits against health care providers or their insurers. In this opinion, we hold only that the Fund does not have subrogation rights which would permit it to pursue a claim for contribution against one whose alleged negligence arose while he or she was

---

[13] We note that Lutheran Hospital has already paid $200,000 toward the *Stach* settlement. Based on statements made during oral argument, Lutheran Hospital apparently does not contest that the other $200,000 of its policy limit is subject to the Fund's contribution claim.

463

conducting a health care providers' business, when that person is not a Wis. Stat. ch. 655 health care provider or a health care provider's insurer. We express no opinion on the Fund's ability to sue those who do not fall under ch. 655 by virtue of the facts that they are not health care providers and their alleged negligence did not arise while they were conducting a health care provider's business.

## IV.

¶ 45. We conclude that the Fund does not have subrogation rights which would allow it to bring a claim for contribution against one whose alleged negligence arose while he or she was conducting a health care provider's business, when that person is not a Wis. Stat. ch. 655 health care provider or a health care provider's insurer. Any alleged negligence of those conducting a health care provider's business is included in the limit imposed by ch. 655 on the liability of the health care provider. *See* Wis. Stat. § 655.23(4), (5).

¶ 46. Pursuant to Wis. Stat. § 655.27(1), the Fund is required to pay the part of a successful claim against one conducting a health care provider's business which exceeds the amount of the health care provider's statutorily mandated insurance coverage or the amount for which the health care provider is actually insured, whichever is greater. Consequently, in this case, the Fund may not sue Nurse Cowell or her insurer for contribution toward the settlement in the *Stach* case.

*By the Court.*—The decision of the court of appeals is affirmed.