COURT OF APPEALS
DECISION
DATED AND FILED

**January 14, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP218**

**STATE OF WISCONSIN**

Cir. Ct. No. **2017CV156**

**IN COURT OF APPEALS
DISTRICT IV**

NATALIE KENNEDY, CHRISTINE KENNEDY AND JONATHAN KENNEDY,

PLAINTIFFS-APPELLANTS,

V.

TERRY GANDER, P.A.,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Sauk County: PATRICIA A. BARRETT, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ.

¶1      KLOPPENBURG, J.   Natalie Kennedy was treated for a broken leg in 2015 by Physician Assistant Terry Gander at a facility operated by SSM Health (SSM). Natalie and her parents, Christine Kennedy and Jonathan Kennedy, sued Gander, SSM, and the Injured Patients and Families Compensation Fund (the

Fund),[1] alleging, among other claims, that Gander was negligent in his treatment of Natalie.  The Kennedys and SSM subsequently stipulated to the dismissal with prejudice of all claims against SSM.

¶2      Following SSM's dismissal, the Fund moved for summary judgment requesting dismissal of the Kennedys' claims against the Fund.  Gander ultimately supported the Fund's motion and also argued that the Kennedys could not pursue a claim against him.  Following extensive briefing and argument, the circuit court granted the motion and entered two orders:  one dismissing all claims against the Fund and one dismissing all claims against Gander.  As to Gander, the court determined that Gander was an employee of SSM and, therefore, could not be named as a defendant in a medical malpractice suit under WIS. STAT. ch. 655 (2017-2018),[2] and that with Gander's dismissal this suit could not proceed because SSM could not be a party on account of the dismissal with prejudice of all claims against SSM.

¶3      The Kennedys appeal the circuit court's order dismissing their claims against Gander.  As we will explain further below, WIS. STAT. ch. 655 governs medical malpractice actions against health care providers as defined by the chapter, and against their employees.  WIS. STAT. § 655.002; *Phelps v. Physicians Ins. Co. of Wisconsin*, 2009 WI 74, ¶64, 319 Wis. 2d 1, 768 N.W.2d 615.  The chapter defines two groups of health care providers:  (1) individual licensed physicians and nurse anesthetists and (2) health care organizations,

---

[1]  The Kennedys also sued other defendants not pertinent to this appeal.

[2]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

partnerships, and corporations. Sec. 655.002. The dispositive issue before this court is whether a suit against an individual who is not a statutorily defined health care provider (Gander), but is an employee of a statutorily defined health care provider (SSM), may proceed where the health care provider employer is not a party.[3] We conclude that a suit against a nonprovider employee as the sole defendant may not proceed where the employer is not a party. Accordingly, we affirm the circuit court's order dismissing the Kennedys' claims against Gander.

## BACKGROUND

¶4     The following pertinent facts are undisputed. In August 2015, Natalie Kennedy fell and broke her leg at a Wisconsin Dells resort. Her parents took her to an urgent care facility operated by SSM, where she was treated by Terry Gander, a licensed physician assistant who was working at the facility pursuant to his placement by a temporary employment agency that arranged for

---

[3] In this opinion we sometimes refer to an individual such as Gander, who is not a statutorily defined health care provider but is an employee of a statutorily defined health care provider, as a "nonprovider employee." *See Rogers v. Saunders,* 2008 WI App 53, *¶19,* 309 Wis. 2d 238, 750 N.W.2d 477 (referring to hospital employees who are not licensed physicians or nurse anesthetists as "nonprovider employees").

The parties identify the legal question in this appeal as whether a nonprovider employee such as Gander may be sued "individually." This term as used in the parties' briefing does not distinguish between the broader question of whether a nonprovider employee may be named as a defendant in a Chapter 655 suit and the narrower question of whether such a suit may proceed against a nonprovider employee as the sole defendant where his or her health care provider employer is not a codefendant. We assume, without deciding, that the answer to the broader question is yes and we focus our analysis on answering the narrower question because it is dispositive. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

physician assistants like Gander to provide care at various health care facilities.[4] The parties agree that Gander was at the time an employee of SSM for purposes of WIS. STAT. ch. 655 and this appeal.

¶5      Natalie received additional treatment and underwent emergency surgery after the Kennedys returned to their home in Iowa.  The Kennedys sued Gander, SSM, and the Injured Patients and Families Compensation Fund, alleging that Gander was negligent in his treatment of Natalie and that Gander's treatment caused injuries to Natalie.

¶6      In June 2019, the Kennedys and SSM stipulated to the dismissal with prejudice of all claims against SSM.  Shortly thereafter, the Fund moved for summary judgment requesting dismissal of all claims against the Fund.  In the briefing and argument that followed, the Fund and Gander addressed whether Gander was an employee of SSM and, if so, whether he could be named as a defendant in a medical malpractice action under WIS. STAT. ch. 655.  The Kennedys filed a brief only after the circuit court ordered additional briefing, in which the Kennedys then made arguments that did not address the above-stated points addressed by the Fund and Gander.

¶7      The circuit court determined the following:  (1) Gander could not be named as a defendant in this suit because he was an "employee of a health care provider" under WIS. STAT. ch. 655; (2) the suit could not proceed in light of Gander's dismissal because Gander's employer SSM had been dismissed with

_____

[4] The parties refer to the agency as a locum tenens agency, which the circuit court explained is a temporary employment agency for medical professionals.  *See also* **Chen v. Warner**, 2005 WI 55, ¶97, 280 Wis. 2d 344, 695 N.W.2d 758 (a locum tenens agency is "the medical profession's equivalent of a temporary employment agency") (Butler, J., dissenting).

prejudice and the only remaining defendant, the Fund, "ha[d] no party who remain[ed] named" to whom the Fund owed any obligation under Chapter 655. Accordingly, the court entered an order dismissing all claims against Gander and a separate order dismissing all claims against the Fund.

¶8 The Kennedys filed a motion for reconsideration, arguing that the circuit court made a manifest error of law in ruling that Gander could not be named as the sole defendant in SSM's absence. Several weeks later, the Kennedys appealed the court's order dismissing their claims against Gander.[5] The court advised the parties that, based on the appeal, it would take no action on the motion for reconsideration.

## DISCUSSION

¶9 We first address and reject Gander's argument that the Kennedys forfeited their right to appeal the circuit court's order granting the motion for summary judgment and dismissing their claims against Gander. We next explain the standard governing our review of the circuit court's order granting the motion for summary judgment. Finally, we explain the statutory scheme laid out in Chapter 655 and apply the chapter's provisions, consistent with its purpose and as interpreted by binding case law, to conclude that a medical malpractice action naming a nonprovider employee as the sole defendant may not proceed where the health care provider employer is not a party to the action.

---

[5] The Kennedys indicated in oral argument that they did not appeal the order dismissing their claims against the Fund because the damages they seek do not rise to a level that would trigger coverage by the Fund. *See* WIS. STAT. § 655.27(5)(a) (providing that the Fund will pay judgments or settlements against health care providers that exceed the providers' liability insurance limits).

5

## I. Forfeiture

¶10     Gander argues that the Kennedys forfeited their right to this appeal by failing on summary judgment to make the argument they make on appeal:  that their Chapter 655 medical malpractice lawsuit may proceed against Gander in SSM's absence.[6]  The Kennedys argue that they preserved the issue by raising it in their motion for reconsideration.  As we explain, we decline to apply the forfeiture rule here.

¶11     As a general rule, we do not consider arguments raised for the first time on appeal.  *Townsend v. Massey*, 2011 WI App 160, ¶¶23-27, 338 Wis. 2d 114, 808 N.W.2d 155.  The rationale for this rule is that it prevents disruption of the judicial process by allowing the circuit court the opportunity to address any arguments in the first instance, and it gives the opposing party notice and an opportunity to address the arguments.  *Id.*, ¶26.

¶12     This court has suggested that a motion to reconsider might save an otherwise forfeited argument.  *Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 196, 488 N.W.2d 104 (Ct. App. 1992) (error argued on appeal forfeited where appellant "had the opportunity to ask the court to reconsider its … ruling ... [but] [i]t did not do so").  *See also* *Highland Manor Associates v. Bast*, 2003 WI 152, ¶17, 268 Wis. 2d 1, 672 N.W.2d 709 ("Motions for reconsideration pending appeal serve an important function.  A circuit's reconsideration may

---

[6] In his appellate briefing, Gander cites *First Interstate Bank of Wisconsin-Southeast v. Heritage Bank and Trust*, 166 Wis. 2d 948, 480 N.W.2d 555 (Ct. App. 1992) and *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 592 N.W.2d 5 (Ct. App. 1998) in support of his forfeiture argument.  However, these cases are inapposite because they deal with issue preclusion as it pertains to the underlying facts of a summary judgment motion, not, as here, with forfeiture as it pertains to a legal question.

obviate the need for an appeal …. Even if an appeal is not avoided, a motion for reconsideration enables a circuit court to hone its analysis and thus expedite the appellate review process.").[7]

¶13 Moreover, the forfeiture rule is one of judicial administration that we may choose to apply at our discretion. *See State v. Beamon,* 2013 WI 47, ¶49, 347 Wis. 2d 559, 830 N.W. 2d 681.

¶14 Here, the circuit court considered on summary judgment the issues of whether Gander could be named as a defendant in the Kennedys' medical malpractice suit and whether that suit could proceed after the Kennedys' claims against SSM had been dismissed with prejudice; and the Kennedys subsequently moved for reconsideration, asserting that the court erred as a matter of law on those issues and providing the circuit court with the opportunity to address the assertion of error. They raise the same issue on appeal, and it has been fully briefed. Accordingly, we choose to exercise our discretion to address the issue.

¶15 We now proceed to our substantive discussion of the dispositive issue presented on appeal.

## II. Standard of Review and General Legal Principles

¶16 This court reviews a grant of summary judgment de novo, using the same methodology employed by the circuit court. *Bank of New York Mellon v.*

---

[7] In oral argument, Gander argued that the motion for reconsideration was insufficient because such a motion implies that the moving party's position on the issue was already considered, and the Kennedys had not argued the issue on summary judgment. However, the issue was considered by the circuit court on the summary judgment submissions of the Fund and Gander, which did argue the issue. Accordingly, the Kennedys' motion for reconsideration did ask the court to revisit an issue it had considered.

*Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2).

¶17 This appeal requires that we interpret and apply statutes to undisputed facts. "Statutory interpretation presents a question of law that we review de novo." *State v. Stewart*, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188. "We construe statutes to determine the legislature's intent." *Clear Channel Outdoor, Inc. v. City of Milwaukee*, 2017 WI App 15, ¶5, 374 Wis. 2d 348, 893 N.W.2d 24. "[S]tatutory interpretation 'begins with the language of the statute.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "In interpreting words in a statutory text, we do more than focus on the dictionary definition of each word. Interpretive aids such as the legislative purpose [and] prior Wisconsin case law… help guide our interpretation." *Force ex rel. Welcenbach v. American Family Mut. Ins. Co.*, 2014 WI 82, ¶13, 356 Wis. 2d 582, 850 N.W.2d 866.

### III. Chapter 655

¶18 We begin by discussing Chapter 655's general statutory scheme. We next interpret the chapter's provisions, guided by its purpose and pertinent binding case law, and conclude that the chapter does not allow a medical malpractice suit to proceed solely against a nonprovider employee under the circumstances present here, where the employer is not a party.

## A. General Structure of Chapter 655.

¶19    "'Chapter 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin' against health care providers … and their employees." *Phelps*, 319 Wis. 2d 1, ¶64 (quoted source omitted). The chapter is titled "Health Care Liability and Injured Patients and Families Compensation." The chapter requires "health care providers" to participate in the Fund, WIS. STAT. § 655.002, and provides that the Fund will pay the portions of malpractice awards against health care providers and their employees that exceed the limits of the health care providers' malpractice insurance liability limits.   WIS. STAT. §§ 655.23(3)(a) and (5); § 655.27(1).   The dual purposes of the statutory scheme are to "curb the rising costs of health care by financing part of the liability incurred by health care providers as a result of medical malpractice claims and to ensure proper claims are satisfied."  Sec. 655.27(6). *See State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 518, 261 N.W.2d 434 (1978) ("The fund is held for the benefit of both the insured health care providers and malpractice victims."). *Cf. Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc.*, 223 Wis. 2d 439, 456, 588 N.W.2d 35 (1999) ("Wis. Stat. ch. 655 and the Fund were designed by the legislature to help limit the increasing cost and possible decreasing availability of health care in Wisconsin.") (internal citation and quotation marks omitted).

¶20    "Health care providers" as defined by the statute fall into two broad categories:   (1) various classes or groupings of "physicians" and/or "nurse anesthetists" and (2) hospitals and other similar organizations providing medical services.   WIS. STAT. § 655.002.   "Physician" is defined by the chapter as a Wisconsin-licensed physician.   WIS. STAT. § 655.001(10m).   *Cf. Phelps v. Physicians Ins. Co. of Wisconsin*, 2005 WI 85, ¶51 n.15, 282 Wis. 2d 69, 698

N.W.2d 643, aff'd in relevant part by *Phelps*, 319 Wis. 2d 1, ¶18 (physician must be licensed to qualify as a health care provider within meaning of statute).

¶21    WIS. STAT. § 655.007 provides that "any patient or the patient's representative having a claim … for injury or death on account of malpractice is subject to this chapter." A patient is "an individual who received or should have received health care services from a health care provider or from an employee of a health care provider acting within the scope of his or her employment." WIS. STAT. § 655.001(10).

¶22    All health care providers as defined by the statute are required to have malpractice insurance. WIS. STAT. § 655.23(3)(a). This insurance must cover at least $1 million for each occurrence of malpractice claims and $3 million for all occurrences in any one year. Sec. 655.23(4)(b).[8] As long as these insurance requirements are met, "the health care provider … and those conducting the health care provider's business, including the health care provider's health care liability insurance carrier, are liable for malpractice for no more than the limits expressed in [the statutory liability limit] or the maximum liability limit for which the health care provider is insured[.]" Sec. 655.23(5). In other words, health care providers must insure their own liability up to a certain amount and may insure their own liability above that amount, but they are not liable for malpractice damages beyond their insured amount.

---

[8] These figures assume a typical insurance plan. The requirements differ for entities covering their liability with cash or surety bonds and for self-insuring entities. *See* WIS. STAT. § 655.23(4)(a) and (c).

¶23    Plaintiffs can nevertheless obtain damages beyond the limits established in WIS. STAT. § 655.23.  They do so by recovering from the Fund. WIS. STAT. § 655.27(1).  To recover from the Fund, plaintiffs must name the Fund as a codefendant "within the same time limitation within which the action against the health care provider or employee of the health care provider must be commenced."  Sec. 655.27(5)(a)(1).  Health care providers must pay into the Fund by annual fee.  Sec. 655.27(3)(a).  In exchange, the Fund pays judgments or settlements against health care providers that exceed the providers' liability limits.  Sec. 655.27(5)(a).  "The legislature established the Fund with the intention that it would underwrite medical malpractice liability incurred in excess of certain statutorily established limits for which health care providers were held responsible."  *Patients Comp. Fund v. Lutheran Hosp.-La Crosse, Inc.*, 216 Wis. 2d 49, 54, 573 N.W.2d 572 (Ct. App. 1997), aff'd *Lutheran Hospital*, 223 Wis. 2d 439.  "[T]he Fund's liability begins only after a health care provider's statutorily mandated liability coverage limits are exceeded."  *Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 613, 547 N.W.2d 578, 583 (1996).  *Cf. Mayo v. Wisconsin Injured Patients & Families Comp. Fund*, 2018 WI 78, ¶7, 383 Wis. 2d 1, 914 N.W.2d 678 ("So long as health care providers maintain the required insurance and annually contribute to the Fund, they are not personally liable for damages arising from medical malpractice.").

¶24    Employees of health care providers, including physician assistants, are not required by WIS. STAT. ch. 655 to maintain their own health care liability insurance coverage, unless the employees are themselves "health care providers" because they are licensed physicians or nurse anesthetists.  WIS. STAT. §§ 655.002(1); 655.23(3)(a).  Nor are physician assistants required by other

Wisconsin law to maintain insurance. *See* WIS. ADMIN. CODE ch. Med 8 (Apr. 2018) (no mention of insurance requirements for physician assistants in Wisconsin).

¶25 Thus, in respects pertinent to this appeal, a suit under WIS. STAT. ch. 655 generally operates as follows. A patient alleges that he or she received negligent care from a health care provider or an employee of a health care provider. If the case results in a judgment or settlement, the health care provider, through its insurer, pays damages up to its liability limit, and the Fund pays any amount in excess of the provider's liability limit. In this way, the patient receives the full damages to which the patient is entitled, but part of the burden is effectively split among all Wisconsin health care providers via the Fund. *See* IPFCF OVERVIEW, https://oci.wi.gov/Pages/Funds/IPFCFOverview.aspx (last visited Oct. 13, 2020) ("The Injured Patients and Families Compensation Fund's … mission is to provide excess medical malpractice coverage to Wisconsin health care providers and to ensure that funds are available to compensate injured patients.").

## *B. Analysis.*

¶26 The Kennedys argue that their medical malpractice suit may proceed against Gander as the sole defendant because a person has a common law right to sue his or her tortfeasor, and nothing in Chapter 655 abrogates that right. However, as we now explain, we conclude that Chapter 655, consistent with its purpose and as interpreted by binding case law, does abrogate that common law right with respect to medical malpractice claims in several significant ways, with the result that a person may not sue a nonprovider employee for medical

malpractice as the sole defendant where, as here, the health care provider employer is not a party.

¶27 As the Kennedys correctly assert, "At common law, an injured party is entitled to bring a claim against a tortfeasor for injuries that party sustained due to the tortfeasor's negligence." *Adams v. Northland Equip. Co., Inc.*, 2014 WI 79, ¶57, 356 Wis. 2d 529, 850 N.W.2d 272. And, "a statute does not abrogate a rule of common law unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent." *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶25, 244 Wis. 2d 758, 628 N.W.2d 833. What the Kennedys disregard, however, is that, consistent with its purpose and as interpreted by case law, Chapter 655 imposes certain conditions that differ from the common law in ways that matter to the issue on appeal. The result is that certain aspects of the common law rule on which the Kennedys rely do not apply because of policy choices made by the legislature.

¶28 Chapter 655 is a comprehensive statutory scheme that reflects the legislature's intent to replace common law medical malpractice tort procedures and remedies with a statutory procedure and remedy. *Phelps*, 319 Wis. 2d 1, ¶64 ("'Chapter 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin' against health care providers … and their employees.") (citation omitted). "It is now firmly established that Chapter 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin." *Finnegan ex rel. Skoglind v. Wisconsin Patients Comp. Fund*, 2003 WI 98, ¶22, 263 Wis. 2d 574, 666 N.W.2d 797 (citations omitted).

¶29 The Kennedys agreed in oral argument that Chapter 655 applies to their claims against Gander. *See* WIS. STAT. § 655.007 ("any patient or the

patient's representative having a claim … for injury or death on account of malpractice is subject to this chapter."). This is so, as the Kennedys also agreed, because Natalie was a "patient" as defined in WIS. STAT. § 655.001(10) and Gander was an "employee" of a "health care provider" SSM as defined in § 655.001(8) and WIS. STAT. § 655.005(1).[9] The Kennedys also agreed in oral argument that Gander was at all material times under the supervision of an SSM physician. *See also* WIS. ADMIN. CODE §§ MED 8.07(1) and 8.09 (through Dec. 2020). It is also uncontested that Gander was acting within the scope of his employment with SSM when he committed the negligent acts alleged by the Kennedys. *See* § 655.005(1) ("Any person … having a claim against a health care provider or an employee of the health care provider, for damages for bodily injury or death due to acts or omissions of the employee of the health care provider acting within the scope of his or her employment and providing health care services, is subject to this chapter."); WIS. STAT. § 655.017 (providing that noneconomic damages "for acts or omissions of an employee of a health care provider, acting within the scope of his or her employment and providing health care" are subject to statutory limits).

¶30 Accordingly, it is undisputed that this action is governed by the statutory scheme of Chapter 655 rather than by common law tort principles. As

---

[9] WISCONSIN STAT. § 655.001(10) ("'Patient' means an individual who received or should have received health care services from a health care provider or from an employee of a health care provider acting within the scope of his or her employment."); § 655.001(8) ("health care provider" defined as persons to whom chapter applies); WIS. STAT. § 655.002(1) (defining persons to whom the chapter applies); WIS. STAT. § 655.005(1) (patient claims "against a health care provider or an employee of the health care provider, for damages for bodily injury or death due to acts or omissions of the employee of the health care provider acting within the scope of his or her employment and providing health care services" subject to Chapter 655).

we now explain, Chapter 655 abrogates the common law in several important respects that are pertinent to this case.

¶31   First and most significantly, Chapter 655 provides that the health care provider employer is legally responsible for the negligent acts of its nonprovider employee. *See* WIS. STAT. § 655.005(2t) (stating that coverage by the Fund "does not affect the liability of a health care provider … for the acts of its employees."). Based on this and the language referenced above, this court has interpreted chapter 655 as treating a nonprovider employee and the health care provider employer as a "unit" for liability purposes. *Rogers v. Saunders*, 2008 WI App 53, ¶19, 309 Wis. 2d 238, 750 N.W.2d 477. The Kennedys do not cite to any common law counterpart to this concept of a liability "unit" between a health care provider employer and a nonprovider employee, which in itself is a major change from the common law.

¶32   In a second, and related, major change from the common law, the chapter provides that the personal assets of a nonprovider employee, like Gander, are never at risk in a medical malpractice action. As explained above, physician assistants such as Gander, along with many other nonprovider employees such as most nurses, are not required by Chapter 655 or by any other statute to maintain their own malpractice insurance. In addition, numerous provisions of the chapter guard against nonprovider employees being exposed to personal liability by providing that the health care provider employer's malpractice insurance and the Fund must cover the nonprovider employee. *See, e.g.,* WIS. STAT. § 655.23(5) (providing that a nonprovider employee "conducting the health care provider's business" is liable for medical malpractice for no more than the health care provider employer's insurance limits); WIS. STAT. §§ 655.005(2) and 655.27(1) and (5)(d) (requiring the Fund to provide coverage for claims against nonprovider

employees and to allow patients to recover from the Fund damages in excess of the health care provider employer's liability limits).[10]

¶33 If nonprovider employees could be personally liable for malpractice, they might be incentivized to pursue individual malpractice coverage, which could result in an increase in health care costs due to efforts to offset that expense, as our supreme court has explained. *See **Lutheran Hosp.***, 223 Wis. 2d at 456-57. This result would be contrary to the objective of Chapter 655 to "curb the rising costs of health care." WIS. STAT. § 655.27(6). For this reason, our supreme court and this court have barred suits that sought to hold nonprovider employees personally liable. *See, e.g.*, ***Lutheran Hosp.***, 223 Wis. 2d at 444, 451, 457 (subrogation suit against nonprovider employee prohibited because liability of a nonprovider employee is covered by the insurance of the health care provider and is included in the statutory liability limits under WIS. STAT. ch. 655); ***Rogers***, 309 Wis. 2d 238, ¶19 (contribution suit against nonprovider employee prohibited because "under WIS. STAT. ch. 655, a health care provider and its nonprovider employees are treated as a unit for liability purposes.").

¶34 In sum, it is clear from the language of chapter 655, as interpreted by binding case law, that, for purposes of this appeal: there is no alleged negligent act by Gander that is not within the scope of his employment; SSM is liable for each such negligent act; SSM's insurance and the Fund will pay for any such negligent act; and Gander and SSM are treated as a "unit" for liability purposes. In these substantial ways, chapter 655 changes the common law, and consistent with these

---

[10] In a third, related, major change from the common law, these same provisions ensure that the health care provider employer's assets are also protected in a medical malpractice action. *See, e.g.*, WIS. STAT. § 655.23(5).

changes, the Kennedys' suit against Gander may not proceed where SSM is not a party.

¶35 The Kennedys argue that nothing in the chapter requires that the health care provider employer be a party in a medical malpractice action because the health care provider employer's malpractice insurance "is legislatively required to provide coverage for harms caused patients by employees of health care providers." As explained above, this argument ignores the liability "unit" that this court has held the chapter creates, comprising the nonprovider employee and the health care provider employer. It does not make sense that the legislature intended to allow a medical malpractice plaintiff to proceed in his or her suit against one member of the liability unit in the absence of the other member of the liability unit that is required to carry insurance covering the liability. As we stated in **Rogers**:

> As the **Lutheran Hospital** court noted, there is no reference in the subsection [WIS. STAT. § 655.23(5)] to anyone's insurance but the health care provider's. It would make little sense for the legislature to tie the liability limit of those conducting a health care provider's business to the provider's policy limit if it did not also intend for the provider's policy to cover that liability.

**Rogers**, 309 Wis. 2d 238, ¶17. In concluding that the health care provider employer that is required to carry insurance must be a party to a medical malpractice lawsuit, we ensure that coverage is provided to any nonprovider employee who is sued, thereby effectuating Chapter 655's dual purposes to "curb the rising costs of health care by financing part of the liability incurred by health care providers as a result of medical malpractice claims and to ensure proper claims are satisfied." WIS. STAT. § 655.27(6).

## CONCLUSION

¶36 For the above reasons, we affirm the circuit court order dismissing the Kennedys' claims against Gander on summary judgment.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.